[Civ. No. 26042. First Dist., Div. One. Oct. 8, 1969.]

ROBERT MANDEL, Plaintiff and Appellant, v. THE MUNICIPAL COURT FOR THE OAKLAND-PIEDMONT JUDICIAL DISTRICT OF ALAMEDA COUNTY, Defendant and Respondent; THE PEOPLE, Real Party in Interest and Respondent.

Garry, Dreyfus, McTernan & Brotsky, Donald ·L. A. Kerson, David E. Pesonen and Charles C. Marson for Plaintiff and Appellant.

Paul N. Halvonik as Amici Curiae on behalf of Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Thomas C. Lynch, Attorney General, Albert W. Harris, Jr., Assistant Attorney General, Robert R. Granucci and Clifford K. Thompson, Jr., for Defendant and Respondent and for Real Party in Interest and Respondent.

SIMS, J.—Petitioner has appealed from a judgment of the superior court which denied his petition for a writ of prohibition to restrain respondent municipal court and the People, as real party in interest, from proceeding in a pending criminal action in which he is charged with five counts of vagrancy in violation of section 653g of the Penal Code.[1] He contends that section 653g is unconstitutional because of overbreadth and vagueness, and that respondent court erred in overruling his demurrer because the facts stated in the complaint "do not constitute a public offense" (Pen. Code, § 1004, subd. 4) and reveal "matter which, if true, would constitute a legal justification or excuse of the offense charged, or other legal bar to the prosecution" (*id.* subd. 5). Amicus curiae urges the unconstitutionality of the statute and joins in the contention that the facts stated show that petitioner was engaged in conduct which is protected by the First and Fourteenth Amendments of the United States Constitution.

The People throughout have insisted on the constitutionality of the statute. They acknowledge that as heretofore sustained the statute requires that the violator act with a purpose or intent of effectuating some criminal act, and, on appeal for the first time, they suggest that such criminality may be found because the petitioner was contributing to the delinquency of minors (Pen. Code, § 272) by encouraging truancy. (See Ed. Code, §§ 12401-12410, and § 10609.)

It is concluded that the facts stated in the complaint fail to show a violation of section 653g as the provisions of that section have been construed in upholding them against attacks on constitutional grounds, and that they do show that petitioner was engaged in an activity which was protected by the provisions of the First and Fourteenth Amendment without giving any cause for exercise of the state interest in the protection of the public health and safety from the particular

---

[1]Section 653g provides: "Every person who loiters about any school or public place at or near which children attend or normally congregate is a vagrant, and is punishable by a fine of not exceeding five hundred dollars ($500) or by imprisonment in the county jail for not exceeding six months, or by both such fine and imprisonment."

evil which is contemplated by the provisions of section 653g. The judgment must be reversed.

*The Record*

The petition sets forth a copy of the complaint filed on April 16, 1968 in the Municipal Court for the Oakland-Piedmont Judicial District. Each count recites, "The undersigned, being sworn, says on information and belief, that said defendant(s) did, in the [judicial district] on or about [various dates from March 1, 1968 to April 3, 1968] commit a misdemeanor to wit: A violation of Section 653g of the Penal Code of California in that said defendant did then and there become a vagrant within the meaning of said section in that said defendant did loiter about a school and public place at and near which school children attend, to wit: [the counts embrace two incidents at one high school and three at another]." The complaint concludes with the following quotation: "'A statement of the facts, which constitute probable cause for the issuance of a warrant based on this complaint, is attached hereto and incorporated by reference.'" (See Pen. Code, § 1427; *People* v. *Sesslin* (1968) 68 Cal.2d 418, 422-426 [67 Cal.Rptr. 409, 439 P.2d 321], cert. den. (1969) 393 U.S. 1080 [21 L.Ed.2d 722, 89 S.Ct. 850]; and *People* v. *Chimel* (1968) 68 Cal.2d 436, 440 [67 Cal.Rptr. 421, 439 P.2d 333] [revd. on other grounds (1969) 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034]].) The parties have assumed that the sufficiency of the complaint is to be determined from all of the facts set forth, including those in the "Crime Report" which is attached to the complaint and incorporated by reference. This court adopts the same assumption without determining whether the prosecution, if so minded, could renege and attempt to rely on the provisions of section 952 of the Penal Code[2] in testing the sufficiency of the complaint, when it has gone farther than required by that section in order to obtain a warrant. (Cf. *Ratner* v. *Municipal Court* (1967) 256 Cal. App.2d 925, 928-929 [64 Cal.Rptr. 500].)

---

[2]Penal Code section 952 provides: "In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved. It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused. . . ."

The report states that on 12 occasions between February 28, 1968 and April 3, 1968, petitioner has been on the campuses of two high schools in Oakland. It lists the vice-principal of one high school as the reporting party, and indicates that he has warned the petitioner to stay off the campus,[3] has read the provisions of section 653g to the petitioner, and has observed the petitioner handing out anti-draft leaflets. According to the report the vice-principal states that the petitioner has caused a disturbance in handing out the leaflets by having large groups of students gather around him on the campus (see fn. 3, above). Five other witnesses, including three police officers, of whom one made the report and signed the complaint, are listed as having observed the petitioner carrying and passing out anti-draft leaflets. One, the vice-principal of the second high school, is noted as having told the petitioner a number of times to stay off the campus of

---

[3]Petitioner has not been charged with a crime against the public peace. (See Pen. Code, tit. 11, §§ 403-420, particularly § 404.6 [incitement to riot], § 408 [rout and unlawful assembly], § 409 [remaining present after warning to disperse from the place of any riot, etc.], § 415 [disturbing the peace], and § 416 [refusal to disperse after unlawful assembly]. See *People* v. *Davis* (1968) 68 Cal.2d 481, 484-486 [67 Cal.Rptr. 547, 439 P.2d 651]; *In re Bacon* (1966) 240 Cal.App.2d 34, 48-51 [49 Cal.Rptr. 322] [hearing in Supreme Court denied]; and *People* v. *Green* (1965) 234 Cal.App.2d Supp. 871, 873-875 [44 Cal.Rptr. 439], cert. den. (1965) 382 U.S. 993 [15 L.Ed.2d 480; 86 S.Ct. 576]; and, cf. *In re Hoffman* (1967) 67 Cal.2d 845, 851-852 and fns. 6 and 7 [64 Cal.Rptr. 97, 434 P.2d 353].) Nor is he charged with unlawful interference with property (see Pen. Code, tit. 13, ch. 12, §§ 552-558.1), or malicious mischief. (See Pen. Code, tit. 14, §§ 594-625b, particularly § 602 [trespasses constituting misdemeanors], subdivision (j) [with intention of interfering with, obstructing or injuring any lawful business or occupation, etc.], § 602, subdivision (n) [refusing or failing to leave a public building], and § 602.9 [interference with peaceful conduct of school activities]. See *Parrish* v. *Municipal Court* (1968) 258 Cal.App.2d 497, 502-505 [65 Cal. Rptr. 862] [hearing in Supreme Court denied]; *In re Bacon, supra,* 240 Cal.App.2d 34, 46-48; *People* v. *Brown* (1965) 236 Cal.App.2d Supp. 915, 921 [47 Cal.Rptr. 662]; and *People* v. *Poe* (1965) 236 Cal.App.2d Supp. 928, 935-937 [47 Cal.Rptr. 670] [criticized on another issue, Traynor, C. J. dissenting]. *In re Hayes* (1969) 70 Cal.2d 604 at p. 614, fn. 2 [75 Cal.Rptr. 790, 451 P.2d 430]; cf. *In re Lane* (1969) 71 Cal.2d 872, 877-878, [79 Cal.Rptr. 729, 457 P.2d 561]; *In re Hoffman, supra,* 67 Cal.2d 845, 851-852 and fn. 6; and note *People* v. *Agnello* (1968) 259 Cal.App.2d 785, 792-793 [66 Cal.Rptr. 571].) Nor does this case involve an obstruction denominated a nuisance under the provisions of sections 370 and 372 of the Penal Code. (See *Pain* v. *Municipal Court* (1968) 268 Cal.App.2d 151 [73 Cal.Rptr. 862].)

No opinion is expressed as to whether the conduct reflected by the crime report attached to the complaint constitutes a violation of any of the foregoing provisions, or, if so, whether any such provision may constitutionally be applied to such conduct. (See *Gregory* v. *Chicago* (1969) 394 U.S. 111, 112 [22 L.Ed.2d 134, 136, 89 S.Ct. 946]; *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 696 [68 Cal.Rptr. 721, 441 P.2d 281].)

that school. It is reported that petitioner did not comply with this request (see fn. 3, above) and that petitioner has read and signed a card stating that he has been informed of the loitering law. A leaflet of the type allegedly distributed, which is attached as a further exhibit,[4] expresses opposition to the war in Vietnam, the selective service system and racism in America. It also states that anti-draft groups "are arranging a student strike and other activities against the war, the draft and racism for April 26 [the last Friday in April 1968]."

The petitioner's demurrer[5] to the complaint was overruled. He entered a plea of not guilty and commenced the instant action to restrain further proceedings because the municipal

[4]The text of the leaflet, augmented by what appears to be a picture of President Johnson, is as follows: "GET THE MAN OFF YOUR BACK [picture] Let's get our stuff together and end the draft. High School people all over the U.S. are getting fed up with the war. We're too young to vote on it, but old enough to get killed in it.

"So WE'RE ORGANIZING. At Fremont, Oakland High, Tech., Berkeley High and Piedmont there are anti-draft groups going to teach people how to beat the draft. These groups are organizing a student strike and other activities against the war, the draft and racism for April 26.

"We're against the war because we think the Vietnamese are fighting a just war for independence.

"We're against the draft because we have no power over it. We have to fight whether we agree with the policy or not.

"And we're against it because it discriminates a Black guy or a Mexican-American is much more likely to be drafted than a white guy even though Blacks and Mexican-Americans are oppressed minorities in this country.

"END THE WAR, THE DRAFT, AND RACISM

"IF YOU WANT TO HELP, IF YOU NEED HELP WITH THE DRAFT, or if you just have questions about the war, there'll be a MEETING"

[5]The demurrer was interposed on the following grounds: "1. The court has no jurisdiction of the offenses charged in that the complaint does not state the charge against defendant in a manner sufficient to, give him notice of the offense of which he is accused, in violation of his rights guaranteed by the Fourteenth Amendment to the United States Constitution.

"2. The facts stated in said Complaint do not constitute a public offense because they fail to allege any specific intent by defendant to engage in any prohibited conduct.

"3. The facts stated in said Complaint do not constitute a public offense because they demonstrate that defendant's conduct was protected by the First Amendment to the United States Constitution.

"4. The facts stated in said Complaint do not constitute a public offense, and the court has no jurisdiction over said offense, in that section 653 (g) of the Penal Code is in violation of the Fourteenth Amendment to the United States Constitution.

"5. The Complaint contains matters constituting legal justification for the alleged offenses, and a legal bar to the prosecution.

"6. The Complaint does not substantially conform to the provisions of sections 950 and 952 of the Penal Code."

court was acting in excess of its jurisdiction.[6] (*Whitney* v. *Municipal Court* (1962) 58 Cal.2d 907, 911 [27 Cal.Rptr. 16, 337 P.2d 80]; *Lambert* v. *Municipal Court* (1960) 53 Cal.2d 690, 691 [3 Cal.Rptr. 168, 349 P.2d 984]; *Rescue Army* v. *Municipal Court* (1946) 28 Cal.2d 460, 462-467 [171 P.2d 8]; *Moore* v. *Municipal Court* (1959) 170 Cal.App.2d 548, 551-554 [339 P.2d 196]; *Kelly* v. *Municipal Court* (1958) 160 Cal. App.2d 38, 46 [324 P.2d 990] [hearing by the Supreme Court denied]; and see *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 687 [68 Cal.Rptr. 721, 441 P.2d 281]; *Pain* v. *Municipal Court* (1968) 268 Cal.App.2d 151, 152 [73 Cal.Rptr. 862]; and *Gleason* v. *Municipal Court* (1964) 226 Cal.App.2d 584, 586 [38 Cal.Rptr. 226].) He alleged, "On the dates specified in said complaint petitioner was on the public sidewalk near the schools mentioned distributing leaflets and handbills criticizing the Selective Service System, racism in America, and the Vietnam war. Petitioner's sole purpose and intention in being around said public schools was to deliver said handbills and leaflets to high school students." No answer to the petition was filed by respondent court or real party in interest. In response to the order to show cause issued on the filing of the petition, the district attorney filed a memorandum of law in which he requested that the writ be denied. After oral argument, the judgment ensued when the court found that the petition failed to state facts sufficient to constitute grounds for relief.

Petitioner properly asserts that under these circumstances the allegations of the petition must be taken as true. (*Dunn* v. *Municipal Court* (1963) 220 Cal.App.2d 858, 865, fn. 5 [34 Cal.Rptr. 251].) Nevertheless, since petitioner's right to relief must depend on showing that further proceedings would be in excess of the jurisdiction of respondent court, for purposes of this review any factual issue must be resolved in accordance with the allegations of the complaint and the attached exhibit. It must be assumed that petitioner was on the campus of each

---

[6]The following grounds are set forth in the petition: "(a) Petitioner's sole purpose and intention in being near and around the public schools in question was to distribute to high school students and others, the aforementioned political handbills and leaflets, which conduct [is] protected by the First and Fourteenth Amendments to the United States Constitution;

"(b) Section 653(g) of the California Penal Code, as applied herein, is vague and indefinite and infringes on rights guaranteed petitioner by the First and Fourteenth Amendments.

"(c) Said complaint does not state a public offense in that it fails to allege any specific intent by petitioner to engage in any unlawful or prohibited conduct."

school, and that he did not remain "on the public sidewalk near the schools" at all times. It is nowhere suggested, however, that this fact crucially affects criminal liability under section 653g. The second allegation concerning petitioner's purpose and intent is not contradicted by but is consistent with, the fair import of the facts in the report.

## Constitutionality and Construction of Section 653g

*In re Huddleson* (1964) 229 Cal.App.2d 618 [40 Cal.Rptr. 581] [hearing by the Supreme Court denied] sets forth this court's ruling upholding the constitutionality of the provisions now found in section 653g,[7] which were then found in subdivision 2 of section 647a (Stats. 1957, ch. 1735, § 1, p. 3120). The problem with respect to the use of the word "loiter" was phrased as follows: "In the instant case, the challenges made to the constitutionality of the subdivision under attack center about the use of the word 'loiter' in the statute. In essence they assert that the word is of such a broad and all-embracing character as to encompass innocent as well as objectionable actions and thus impose an unreasonable proscription upon the conduct of the public at large. The word 'loiter' has been defined to mean 'To be slow in moving; delay; linger; saunter; lag behind' (Webster's New International Dictionary (2d ed.); see *State* v. *Starr* (1941) 57 Ariz. 270 . . .) or 'to linger idly by the way, to idle' (*Phillips* v. *Municipal Court* (1938) 24 Cal.App.2d 453, 455 . . .), While taken by itself and in its broad meaning the term may carry no criminal implications, nevertheless as employed in a penal statute and considered in such statutory context, it may have a sinister, wrongful or criminal import. (*In re Cregler, supra* [1961] 56 Cal.2d 308, 311-312 [14 Cal.Rptr. 289, 363 P.2d 305]; *People* v. *Merolla* (1961) 9 N.Y.2d 62 . . .; *People* v. *Bell* (1953) 306 N.Y. 110 . . .; *State* v. *Starr, supra;* see *Gleason* v. *Municipal Court* (1964) 226 Cal.App.2d 584, 587. . . . Cf. *People* v. *Bruno* (1962) 211 Cal.App.2d Supp. 855,

---

[7]As originally adopted (Stats. 1929, ch. 376, § 1, p. 697) provisions similar to those now found in section 653g were integrated in section 647a with provisions substantially the same as those now found in the latter section. The constitutionality of section 647a as it then read was upheld in *Phillips* v. *Municipal Court* (1938) 24 Cal.App.2d 453, 455-456 [75 P.2d 548] over the dissent of McComb, J. A hearing was denied by the Supreme Court. In 1947 (Stats. 1947, ch. 730, § 1, p. 1783) the provisions were separated into two subdivisions. They are now found in section 647a and section 653g as created by amendment and addition in 1967 (Stats. 1967, ch. 154, §§ 1 and 2, p. 1241).

860-861 . . . in respect to the criminal implications of the term 'wandering.') " (229 Cal.App.2d at pp. 621-622.)

After reviewing various canons of construction the court ruled, ". . . we have therefore concluded that the term loiter in the context of the statute under consideration proscribes only that species of 'lingering' and 'idling' about schools or public places which is engaged in for an evil or sinister pur-pose. As pointed out above, section 647a was enacted to pro-tect children. Subdivision (1) thereof makes guilty of a mis-demeanor or felony as the case may be every person who an-noys or molests any child under the age of 18 [reference to text of statute omitted]. Subdivision (2) provides additional protection for children by removing any opportunity for the child molester to carry out his evil purpose. Both subdivisions label the offender a 'vagrant.' Nevertheless it is obvious that the purpose of the first subdivision is largely punitive while that of the second subdivision is largely preventive. (See Per-kins, *The Vagrancy Concept*, 9 Hastings L.J. 237, 250-261; Sherry, *Vagrants, Rogues and Vagabonds*, 48 Cal.L.Rev. 557, 566-567.) But, as we have said, the loitering condemned by the second subdivision is not loitering in its general sense but in its restricted and sinister sense. It includes lingering, wait-ing and delaying but only for a sinister or wrongful purpose and therefore excludes such activities for a lawful purpose. 'Loitering as forbidden includes waiting, but mere waiting for any lawful purpose does not constitute such loitering.' (*In re Cregler, supra,* 56 Cal.2d 308, 312.)

"Therefore as we construe the statute before us, persons who merely sit on park benches, loll on public beaches, pause in the vicinity of schools or linger in the many public areas frequented by children cannot be reasonably considered as loitering within the compass of the statute. It is only when the loitering is of such a nature that from the totality of the person's actions and in the light of the prevailing circum-stances, it may be reasonably concluded that it is being en-gaged in 'for the purpose of committing a crime as oppor-tunity may be discovered' (*In re Cregler, supra*) that such conduct falls within the statute. We therefore hold that the term loiter has a clear and reasonably definite significance in the context of the statute, that it is not so vague and indefi-nite as to offend constitutional guaranties and that the statute so contrued does not invade, deny or abridge personal rights and liberties. It also follows that the statute as so construed possesses the required uniformity of operation to satisfy the mandate of article I, section 11, of the Constitution." (*Id.,*

pp. 625-626.) Authorities upon which amicus curiae now relies[8] were considered and distinguished. (*Id.*, p. 627.)

A similar construction has been given the words "loaf or loiter" in upholding the constitutionality of that portion of a municipal ordinance making it unlawful "to loaf or loiter in any waiting room, lobby, or other portion of any railway station" etc. (*In re Hoffman* (1967) 67 Cal.2d 845, 853 [64 Cal.Rptr. 97, 434 P.2d 353]. See *People* v. *Weger* (1967) 251 Cal.App.2d 584, 591-593 [59 Cal.Rptr. 661] [hearing by the Supreme Court denied, and cert. denied (1968) 389 U.S. 1047 [19 L.Ed.3d 840, 88 S.Ct. 774]] [upholding over the dissent of Herndon, J. the constitutionality of subdivision (e) of section 647 as adopted in 1961 (Stats. 1961, ch. 560, § 2, p. 1672)]; *Gleason* v. *Municipal Court* (1964) 226 Cal.App.2d 584, 587 [38 Cal.Rptr. 226] [upholding a municipal ordinance prohibiting loitering in any tunnel and other described places of similar nature, against attack on grounds that state legislation had preempted the field]; *Phillips* v. *Municipal Court* (1938) 24 Cal.App.2d 453, 456 [see fn. 7] [75 P.2d 548] and *People* v. *Bruno* (1962) 211 Cal.App.2d Supp. 855, 860-861 [27 Cal.Rptr. 458] [upholding and applying subdivision (e) of section 647 as adopted in 1961]; and *Anderson* v. *Shaver* (D.N.M. 1968) 290 F.Supp. 920 [upholding the constitutionality of an Arizona statute prohibiting "loitering about or on any . . . school . . . without lawful business there"].)

It is asserted that the use of the provision of section 653g to curb political dissent demonstrates that its provisions, as construed in *In re Huddleson,* are overly vague and that *Huddleson* should be reviewed and overruled. ■ The constitutional criteria for certainty are set forth in *Katzev* v. *County of Los Angeles* (1959) 52 Cal.2d 360 [341 P.2d 310] as follows: "Both the California Constitution, article I, section 13, and the Constitution of the United States, Fourteenth Amendment, provide that no person shall be deprived of life, liberty, or property without due process of law. Due process means that 'No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes. All are entitled to be informed as to what the State commands or forbids.' (*Lanzetta* v. *New Jersey,* 306 U.S. 451, 453 . . .; *In re Porterfield,* 28 Cal.2d 91, 120. . . .)

[8]*Commonwealth* v. *Carpenter* (1950) 325 Mass. 519 [91 N.E.2d 666]; *Ex parte Mittelstaedt* (1957) 164 Tex.Crim.Rep. 115 [297 S.W.2d 153]; *Territory of Hawaii* v. *Anduha* (9th Cir. 1931) 48 F.2d 171.

█ "The standard to be applied is set forth in *Connally* v. *General Const. Co.*, 269 U.S. 385, 391 . . . : 'That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law.' '' (52 Cal.2d at p. 370. See also, *In re Newbern* (1960) 53 Cal.2d 786, 792 [3 Cal. Rptr. 364, 350 P.2d 116]; and *In re Davis* (1966) 242 Cal. App.2d 645, 650 [51 Cal.Rptr. 702].)

If *Huddleson* is deemed to construe the provisions now found in section 653g as proscribing loitering for any "sinister or wrongful" purpose (see *In re Hoffman, supra,* 67, Cal.2d at p. 853, and *In re Huddleson, supra,* 229 Cal.App.2d at pp. 622, 623 and 625), there may be some merit to the objection raised by petitioner and amicus curiae. No criteria are suggested for a determination of what is sinister or what is wrongful. Under these circumstances the enforcement of the section may in effect turn on the proclivities of the authority evaluating the conduct of the suspect, and the former's conception of what is sinister or wrongful.

In *Suttlesworth* v. *Birmingham* (1969) 394 U.S. 147 [22 L.Ed.2d 162, 89 S.Ct. 935] the court struck down a conviction under a city ordinance which made it an offense to participate in a parade or procession or other public demonstration without a permit, because the ordinance, as written and as the surrounding relevant circumstances showed it had been actually applied, "conferred upon the City Commission virtually unbridled and absolute power to prohibit any 'parade,' 'procession' or 'demonstration' on the city's streets or public ways." (394 U.S. at p. 150 [22 L.Ed.2d at p. 167]. See also *Interstate Circuit* v. *Dallas* (1968) 390 U.S. 676, 682-688 [20 L.Ed.2d 225, 230-234, 88 S.Ct. 1298]; *Cox* v. *Louisiana* (1965) 379 U.S. 536, 555-558 [13 L.Ed.2d 471, 484-486, 85 S.Ct. 453]; *Saia* v. *New York* (1948) 334 U.S. 558, 560 [92 L.Ed. 1574, 1577, 68 S.Ct. 1147]; *Hague* v. *Committee for Industrial Organization* (1939) 307 U.S. 496, 516 [83 L.Ed. 1423, 1437, 59 S.Ct. 954]; *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 691-692 [68 Cal.Rptr. 721, 441 P.2d 281]; and *American Civil Liberties Union* v. *Board of Education* (1961) 55 Cal.2d

167, 178-180 [10 Cal.Rptr. 647, 359 P.2d 45, 94 A.L.R.2d 1259].)

The court concluded, "Even when the use of its public streets and sidewalks is involved, therefore, a municipality may not empower its licensing officials to roam essentially at will, dispensing or withholding permission to speak, assemble, picket, or parade, according to their own opinions regarding the potential effect of the activity in question on the 'welfare,' 'decency,' and 'morals' of the community.'' (394 U.S. at p. 153 [22 L.Ed.2d at p. 168]. See also *Schneider* v. *State* (1939) 308 U.S. 147, 163-165 [84 L.Ed. 155, 165-166, 60 S.Ct. 146].)

So here petitioner urges that a construction of the ordinance which vests the law enforcement officer with the arbitrary power to determine what is "a sinister or wrongful purpose" and to arrest anyone who may be lingering, waiting or delaying if the officer concluded that the suspect has such purpose, is unconstitutionally vague and over broad because it places an unconstitutional censorship or prior restraint upon the enjoyment of the exercise of First Amendment freedoms. In the words of Justice Black, concurred in by Justice Douglas, in the concurring opinion in *Gregory* v. *Chicago* (1969) 394 U.S. 111, 118 [22 L.Ed.2d 134, 140, 89 S.Ct. 946], "The disorderly conduct ordinance under which these petitioners were charged and convicted is not, however, a narrowly drawn law, particularly designed to regulate certain kinds of conduct. . . . To the contrary, it might better be described as a meat ax ordinance, gathering in one comprehensive definition of an offense a number of words which have a multiplicity of meanings, some of which would cover activity specifically protected by the First Amendment. The average person charged with its violation is necessarily left uncertain as to what conduct and attitudes of mind would be enough to convict under it." (See also, Douglas J. with Warren, C.J., Brennan, J. and Fortas, J. dissenting in *Adderley* v. *Florida* (1966) 385 U.S. 39, 56 [17 L.Ed.2d 149, 161, 87 S.Ct. 242] ; Black, J. concurring in *Cox* v. *Louisiana, supra,* 379 U.S. 536, 579 [13 L.Ed.2d 487, 501, 85 S.Ct. 476] ; and *Thornhill* v. *Alabama* (1940) 310 U.S. 88, 97-98 [84 L.Ed. 1093, 1099-1100, 60 S.Ct. 736].)

It is also contended that the provisions of section 653g, as so construed, are overly broad in that the aim of the statute— to provide "additional protection for children by removing any opportunity for the child molester to carry out his evil

purpose'' (*In re Huddleson, supra,* 229 Cal.App.2d at p. 625)—could be accomplished without prohibiting all loitering for what might arbitrarily be determined to be a sinister or wrongful purpose. (Cf. *In re Huddleson, supra,* 229 Cal.App. 2d at pp. 625 and 626, with *Phillips* v. *Municipal Court; supra,* 24 Cal.App.2d at p. 456 suggesting innocent acts may be prohibited.)

When a statute, ordinance, or regulation ''completely prohibits protected activities although a narrower measure would fully achieve the intended ends and at the same time preserve an effective place for the dissemination of ideas'' its overbreadth may render it unconstitutional. (*In re Hoffman, supra,* 67 Cal.2d 845, 853. See also, *Los Angeles Teachers Union* v. *Los Angeles City Board of Education* (1969) 71 Cal.2d 551, 564 [78 Cal.Rptr. 723, 455 P.2d 827]; *In re Anderson* (1968) 69 Cal.2d 613, 636, fn. 1 [73 Cal.Rptr. 21, 447 P.2d 117]; *In re Berry* (1968) 68 Cal.2d 137, 156, fn. 15 [65 Cal.Rptr. 273, 436 P.2d 273]; *Katzev* v. *County of Los Angeles, supra,* 52 Cal.2d 360, 367-368; *Carroll* v. *President & Comrs. of Princess Anne* (1968) 393 U.S. 175, 183 [21 L.Ed. 2d 325, 333, 89 S.Ct. 347, 353]; *United States* v. *Robel* (1969) 389 U.S. 258, 265-268 [19 L.Ed.2d 508, 514-516, 88 S.Ct. 419]; *Zwickler* v. *Koota* (1967) 389 U.S. 241, 249-250, [19 L.Ed.2d 444, 450-451, 88 S.Ct. 391]; *Keyishnan* v. *Board of Regents* (1967) 385 U.S. 589, 602-604 [17 L.Ed.2d 629, 640-641, 87 S.Ct. 675]; *Elfbrandt* v. *Russell* (1966) 384 U.S. 11, 18-19 [16 L.Ed.2d 321, 325-326, 86 S.Ct. 1238]; *Cox* v. *Louisiana, supra,* 379 U.S. 536, 551-552 [13 L.Ed.2d 471, 482-483, 85 S.Ct. 453]; *Edwards* v. *South Carolina* (1963) 372 U.S. 229, 236-238 [9 L.Ed.2d 697, 702-703, 83 S. Ct. 680]; *N.A.A.C.P.* v. *Button* (1963) 371 U.S. 415, 431-438 [9 L.Ed.2d 405, 417-421, 83 S.Ct. 328]; *Shelton* v. *Tucker* (1960) 364 U.S. 479, 490 [5 L.Ed.2d 231, 238, 81 S.Ct. 247]; *Talley* v. *California* (1960) 362 U.S. 60, 64-65 [4 L.Ed.2d 559, 562-563, 80 S.Ct. 536]; *Saia* v. *New York, supra,* 334 U.S. 558, 562 [92 L.Ed. 1574, 1578]; and *Thornhill* v. *Alabama, supra,* 310 U.S. 88, 105-106 [84 L.Ed. 1093, 1104]; *Schneider* v. *State, supra,* 308 U.S. 147, 162 [84 L.Ed. 155, 165].)

On the other hand when a ''statute on its face is a valid law dealing with conduct subject to regulation so as to vindicate important interests of society . . . the fact that free speech is intermingled with such conduct does not bring with it constitutional protection.'' (*Cox* v. *Louisiana, supra,* 379 U.S. 559, 564 [13 L.Ed.2d 487, 492] [upholding the constitu-

tionality of a state statute prohibiting picketing and parading in or near a courthouse with the intent of interfering with, obstructing, or impeding the administration of justice, etc.]. See also, *Cameron* v. *Johnson* (1968) 390 U.S. 611, 617 [20 L.Ed.2d 182, 188, 88 S.Ct. 1335] [upholding the constitutionality of a state statute prohibiting picketing in such a manner as to obstruct or unreasonably interfere with free ingress or egress to and from any county courthouse]; *Adderley* v. *Florida, supra,* 385 U.S. 39, 44 [17 L.Ed.2d 149, 154] [upholding the constitutionality of a state malicious trespass law, and its application to demonstrators who refuse to leave that part of the jail grounds reserved for jail uses]; *Cox* v. *Louisiana, supra,* 379 U.S. 536, 555 [13 L.Ed.2d 471, 484] [dicta]; *Kovacs* v. *Cooper* (1949) 336 U.S. 77, 85-89 [93 L.Ed. 513, 521-523, 69 S.Ct. 448, 10 A.L.R.2d 608] [upholding the constitutionality of an ordinance barring sound trucks from broadcasting in a loud and raucous manner on the streets]; *People* v. *Davis* (1968) 68 Cal.2d 481, 486 [67 Cal. Rptr. 547, 439 P.2d 651] [upholding the constitutionality of Penal Code, § 404.6]; and *Pain* v. *Municipal Court, supra,* 268 Cal.App.2d 151, 153 [unreasonable obstruction of a public street, Pen. Code, §§ 370 and 372].)

*In re Huddleson* suggests, and the principles set forth above require adoption of, a narrower construction of the ordinance. The court said, ''We are of the opinion that the word 'loiter' was intended to proscribe lingering about schools and public places for the purpose or with the intent of effectuating *some criminal act*'' (229 Cal.App.2d at p. 623, italics added), and it adopted from *In re Cregler, supra,* the phrase '' 'for the purpose of committing *crime* as opportunity may be discovered.' '' (*Id.,* at p. 625, italics added.) The approval of *In re Cregler, supra,* in *In re Hoffman* (67 Cal.2d at p. 853) permits and does not preclude the narrower construction.

The statute as so construed falls within the legitimate governmental interest in protecting children and controlling the public ways around schools and public places where children normally congregate. There remains for consideration the question of whether the facts alleged suggest or permit a finding that the petitioner was loitering, and that his loitering was ''of such a nature that from the totality of [his] actions and in the light of the prevailing circumstances, it may be reasonably concluded that it [was] being engaged in 'for the purpose of committing a crime as opportunity may be

discovered.' '' (See *In re Huddleson, supra,* 229 Cal.App.2d at p. 625.) Since the prevailing circumstances, as alleged, give rise to a claim of activity protected by the First Amendment, the extent of that right must be examined to determine the legality of petitioner's alleged action, and to determine whether the otherwise constitutional ordinance, can constitutionally be applied to the circumstances revealed by the complaint.

■ ''When the effective exercise of First Amendment rights relating to speech is impaired by governmental regulation, a court must weigh the extent of the impairment against both the importance of the governmental interest and the substantiality of the threat which the forbidden speech or related activity poses to that interest. Both alternatives available to the government—to achieve its regulatory objective in a manner less restrictive of those rights—and alternatives available to the speaker—to exercise his right to effective communication in a manner less hostile to the governmental interest—must be appraised.'' (*Los Angeles Teachers Union* v. *Los Angeles City Board of Education, supra,* 71 Cal.2d 551, 556. See also, *Thornhill* v. *Alabama, supra,* 310 U.S. 88, 95-96 [84 L.Ed. 1093, 1098-1099].)

*First Amendment Protection*

''Freedom of speech assured by the First Amendment is one of the basic tenets of a free society. As aptly stated by Justice Holmes in 1919, 'when men have realized that time has upset many fighting faiths, they may come to believe even more than they believe the very foundations of their own conduct that the ultimate good desired is better reached by free trade in ideas—that the best test of truth is the power of the thought to get itself accepted in the competition of the market, and that truth is the only ground upon which their wishes safely can be carried out. That at any rate is the theory of our Constitution.' (*Abrams* v. *United States,* 250 U.S. 616, 630-631 . . .)

■ ''Freedom of speech encompasses more than simply the right to be protected from censorship of content. It extends to communication in its most fundamental sense. The First Amendment embraces both the right to disseminate information . . . and necessarily the right to receive it . . .'' (*Huntley* v. *Public Utilities Com.* (1968) 69 Cal.2d 67, 71-72 [69 Cal.Rptr. 605, 442 P.2d 685] [citations omitted]. See also *Los Angeles Teachers Union* v. *Los Angeles City Board of*

*Education, supra,* 71 Cal.2d 551, 565; *Wirta* v. *Alameda-Contra Costa Transit Dist.* (1967) 68 Cal.2d 51, 54 [64 Cal. Rptr. 430, 434 P.2d 982]; *American Civil Liberties Union* v. *Board of Education, supra,* 55 Cal.2d 167, 178-180; *Katzev* v. *County of Los Angeles, supra,* 52 Cal.2d 360, 365-367.)

■ The protection of the First and Fourteenth Amendments extends to the distribution of information and opinion concerning religious, political and economic matters, and other subjects of public concern, through handbills, leaflets and pamphlets. In *Jamison* v. *Texas* (1943) 318 U.S. 413 [87 L.Ed. 869, 63 S.Ct. 669], the court ruled, ". . . one who is rightfully on a street which the state has left open to the public carries with him there as elsewhere the constitutional right to express his views in an orderly fashion. This right extends to the communication of ideas by handbills and literature as well as by the spoken word. [Citations.]" (318 U.S. at p. 416 [87 L.Ed. at p. 872]. See also, *Talley* v. *California* (1960) 362 U.S. 60, 62-63 [4 L.Ed.2d 559, 561-562, 80 S.Ct. 536]; *Schneider* v. *State, supra,* 308 U.S. 147, 161-162 [48 L.Ed. 155, 164-165]; *Hague* v. *Committee for Industrial Organization, supra,* 307 U.S. 496, 518 [83 L.Ed. 1423, 1438]; *Lovell* v. *Griffin* (1938) 303 U.S. 444, 450-452 [82 L.Ed. 949, 952-954, 58 S.Ct. 666]; *In re Lane, supra,* 71 Cal.2d 872, 874; *In re Hoffman, supra,* 67 Cal.2d 845, 847 and 849; and cf. *Valentine* v. *Chrestensen* (1942) 316 U.S. 52 [86 L.Ed. 1262, 62 S.Ct. 920] [commercial advertising].)

■ "First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." (*Tinker* v. *Des Moines Independent Community School Dist.* (1969) 393 U.S. 503, 506 [21 L.Ed.2d 731, 737, 89 S.Ct. 733]. See also, *Los Angeles Teachers Union* v. *Los Angeles City Board of Education, supra,* 71 Cal.2d 551, 558; and Comment, *Public Secondary Education: Judicial Protection of Student Individuality* (1969) 42 So.Cal.L.Rev. 126, 140-141.)

[11] Discussion of the Vietnam conflict and the selective service system, and the voicing of opposition to both are recognized subjects of free speech. (See *Tinker* v. *Des Moines Independent Community School Dist., supra,* 393 U.S. 503, 513 [21 L.Ed.2d 731, 742]; and *In re Hoffman, supra,* 67 Cal.2d 845, 847.)

 Any vagueness in the statute or overbreadth in its interpretation or application cannot be justified on the ground that it is designed to protect children. "Nor is it an answer to an argument that a particular regulation of expression is vague to say that it was adopted for the salutary purpose of protecting children. The permissible extent of vagueness is not directly proportional to, or a function of, the extent of the power to regulate or control expression, with respect to children." (*Interstate Circuit* v. *Dallas, supra,* 390 U.S. 676, 689 [20 L.Ed.2d 225, 234]. Accord; *Rabeck* v. *New York* (1968) 391 U.S. 462 [20 L.Ed.2d 741, 88 S.Ct. 1716]. See also *Katzev* v. *County of Los Angeles, supra,* 52 Cal.2d 360, 367.)

The activities charged to petitioner must be examined in the light of the foregoing principles.

*Loitering and Lawful Purpose*

The distinction between the presence of one who is merely loitering, and the presence of one who is in attendance for some current purpose or business, be it lawful or unlawful, is exemplified by comparison of two opinions of this court authored by former Presiding Justice, now Supreme Court Associate Justice, Peters.

In *Wright v. Munro* (1956) 144 Cal.App.2d 843 [301 P.2d 997] [hearing by the Supreme Court denied] the court upheld the provisions of subdivision (b) of section 25657 of the Business and Professions Code.[9] The court noted, "The term 'loiter' has a well recognized meaning, and that is 'to linger idly by the way,' 'to idle,' 'to loaf' or to 'idle.' (*Phillips* v. *Municipal Court,* 24 Cal.App.2d 453, 455 . . ." (144 Cal.App.2d at p. 847. See also, *People* v. *Weger, supra,* 251 Cal.App.2d 584, 591; *In re Huddleson, supra,* 229 Cal.App.2d 618, 622; and Roget's International Thesaurus (3d ed. 1962) pp. 468-469 classifying "loitering," "loiterer" and "loiter" under "inactivity.") It concluded: "The word 'loiter,' . . . is clear and certain." (*Id.,* p. 848.)

In *Garcia* v. *Munro* (1958) 161 Cal.App.2d 425 [326 P.2d 894], the same court reversed a revocation of a license which had been predicated on the application of the same section. The court ruled and concluded as follows: ". . . the fact that a bartender or waitress solicits a drink from a patron, and

_____

[9]Section 25657, subdivision (b), provides that it is unlawful "In any place of business where alcoholic beverages are sold to be consumed upon the premises, to employ or knowingly permit anyone to loiter in or about said premises for the purpose of begging or soliciting any patron or customer of, or visitor in, such premises to purchase any alcoholic beverages for the one begging or soliciting."

talks with him, does not support an inference that such bartender or waitress was employed 'to loiter' to solicit drinks. There is no evidence at all that Jennie sat down with the patrons or neglected her duties as a bartender while drinking with patrons. There is no evidence that she lingered idly by or was loafing on the job. In *Wright* v. *Munro, supra,* the verb 'loiter' was defined to mean 'to linger idly by the way, to idle'; 'to loaf'; or 'to idle.' The term has been defined in many cases. In every definition we have found (see many cases collected in 25 Words and Phrases (perm.ed.) p. 586 et seq.; 1958 pocket part, p. 193) there is included the concepts of to stand idly by, to spend time idly, to loaf, or to walk about aimlessly without purpose. There is no evidence that Jennie did any of these things. For that reason there is no evidence to support the finding that she was employed to loiter on the premises to solicit drinks from patrons.'' (161 Cal.App.2d at pp. 429-430.)

Similarly in *In re Cregler, supra,* the court observed, ''Manifestly one who goes to a bus station or railroad depot and waits for the purpose of buying a ticket, boarding the conveyance, meeting a relative or friend actually expected to arrive, or with any other legitimate objective, is not loitering within the sense of the statute. Loitering as forbidden includes waiting, but mere waiting for any lawful purpose does not constitute such loitering.'' (56 Cal.2d at p. 312.) In *People* v. *Bruno, supra,* the court recognized a distinction between loitering or wandering, and walking along a residential street with an apparent reason, such as walking to work, but found that on the evidence in that case the issue was a question of fact to be resolved by the trier of fact. (211 Cal. App.2d Supp. at p. 860.)

In the *Hoffman* case the court upheld the validity of that portion of the municipal ordinance which prohibited loitering in railway stations (67 Cal.2d at p. 853). Nevertheless, it discharged the petitioners who had been convicted following their arrest on failure to leave the station where they were distributing leaflets protesting United States action in Vietnam and the impending court martial of three soldiers who had refused to go to Vietnam. The court observed, ''The trial court applied the *Creglar* definition of 'loiter' and found that petitioners violated the first part of the ordinance. The record clearly indicates that the court reached this conclusion by finding that petitioners violated the second part of the ordinance and then reasoning that they were therefore present

without any 'lawful purpose.' Since the second part of the ordinance is broader than constitutionally permissible, petitioners' convictions cannot stand under any theory, for *there is no other evidence that they were present in Union Station for an 'unlawful' purpose."* (67 Cal.2d at p. 854, italics added.)

In *Anderson* v. *Shaver, supra,* 290 F.Supp. 920, the court by application of the "abstentation doctrine" to review of a state conviction which resulted after a trial and which was on appeal (see *Cameron* v. *Johnson, supra,* 390 U.S. 611, 617-618 [20 L.Ed.2d 182, 188-189]; and cf. Fortas, J. dissenting at p. 622 [20 L.Ed.2d at p. 191]; and *Zwickler* v. *Koota, supra,* 389 U.S. 241, 252 [19 L.Ed.2d 444, 452]) refused to consider whether the distribution of anti-draft literature could legally be encompassed within a statute similar to that involved in this case. (290 F.Supp. at p. 922.) The court, after holding the terms of the ordinance constitutional, did observe with respect to the manner in which it was enforced, "The evidence does not establish bad faith enforcement designed to interfere with protected freedoms. The evidence is uncontradicted that the school officials believe that no one had the right to be on the school grounds without permission and that the Albuquerque police believe that anyone who goes on any school grounds without permission violates the ordinance. Indeed, the police have uniformly so applied the ordinance.

"The ordinance does not state that being on the grounds without permission constitutes vagrancy. This is not to say that one which does would be unconstitutional, for it has been held that the contrary is true. See *People* v. *Sprowal* (1966) 18 N.Y.2d 683, 273 N.Y.S.2d 430 [219 N.E.2d 878]; *People* v. *Johnson* (1959) 6 N.Y.2d 549, 190 N.Y.S.2d 649 [161 N.E.2d 9]. However, to interpret the ordinance here under attack as saying what the officials believe it says would raise serious constitutional questions, for it, unlike the statute in *Sprowal* and *Johnson,* does not state that permission to be on school grounds is required." (*Id.*)

Since the uncontradicted facts alleged in this case show that petitioner was engaged in the lawful activity of passing out leaflets and handbills, they contradict and control the general allegations that he "did loiter." The facts stated in the complaint, when taken as a whole, do not constitute a public offense under secion 653g of Penal Code. (Cf. *Thomp-*

*son* v. *Louisville* (1960) 362 U.S. 199, 204-205 [4 L.Ed.2d 654, 658-659, 80 S.Ct. 624, 80 A.L.R.2d 1355].)

*Criminal Purpose and Truancy*

If petitioner was lawfully on the school grounds the fact that large groups of interested students gathered around him would not of itself constitute an illegal disturbance.

██ ''The government has no valid interest in restricting or prohibiting speech or speech-related activity simply in order to avert the sort of disturbance, argument or unrest which is inevitably generated by the expression of ideas which are controversial and invite dispute. The danger justifying restriction or prohibition must be one which 'rises far above public inconvenience, annoyance, or unrest.' (*Terminiello* v. *Chicago* [1948] 337 U.S. 1, 4 . . .)'' (*Los Angeles Teachers Union* v. *Los Angeles City Board of Education, supra,* 71 Cal.2d 551, 558. See also, *Cox* v. *Louisiana, supra,* 379 U.S. 536, 550-551 [13 L.Ed.2d 471, 481-482] ; and *Edwards* v. *South Carolina* (1963) 372 U.S. 229, 238 [9 L.Ed.2d 697, 704].)

██ ''Tolerance of the unrest intrinsic to the expression of controversial ideas is constitutionally required even in the schools. 'In order for . . . school officials to justify prohibition [on school premises] of a particular expression of opinion, [they] must be able to show that [their] action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint.' (*Tinker* v. *Des Moines Independent Community School Dist., supra,* 393 U.S. 503, 509 . . .) 'Any word spoken, in class, in the lunchroom or on campus, that deviates from the views of another person, may start an argument or cause a disturbance. But our Constitution says we must take this risk. . . .' (*Id.,* at p. 508 . . .)'' (71 Cal.2d at p. 559.)

Nor does an order to disperse of itself, without some legal authority or justification, render the refusal to obey by one legally present, a criminal act. (See *Gregory* v. *Chicago, supra,* 394 U.S. 111, 120 [22 L.Ed.2d 134, 141] Black, J. and Douglas, J. concurring; *Cox* v. *Louisiana, supra,* 379 U.S. 559, 572-573 [13 L.Ed.2d 487, 496-497] ; and *In re Hoffman, supra,* 67 Cal.2d 845 ; cf. pp. 848 and 854.)

██ The ʹPeople assert that the leaflet encouraged students to strike on a school day in violation of a statutory duty to attend school. They rely upon the provisions of section

10609 of the Education Code,[10] and those sections of that code (Ed. Code, §§ 12401-12408) defining a truant and an habitual truant, prescribing the arrest of truants, and providing for the institution of proceedings in the juvenile court on behalf of habitual truants. The People also refer to section 601 of the Welfare and Institutions Code which provides in pertinent part, "Any person under the age of 21 years who persistently or habitually refuses to obey the reasonable and proper orders or directions of his . . . school authorities, or who is beyond the control of such person, or any person who is a habitual truant from school within the meaning of any law of this State . . . is within the jurisdiction of the juvenile court. . . ."

From the foregoing, the People contend that the complaint reflects that the petitioner was loitering about the school for the purpose of contributing to the delinquency of a minor in violation of the provisions of Penal Code section 272.[11] This proposed analysis fails on several scores.

It may be suggested, because of the statutory history (see fn. 7, above), and because of what has been said in *In re Huddleson, supra,* that the purpose for, or intent with which the offender lingers is the intent to annoy or molest a child as proscribed by the provisions of section 647a with which the provisions now found in section 653g were originally and long coupled. In *Huddleson* the court observed, "It is clear that the purpose of section 647a, considered in its entirety, is the 'protection of children from interference by sexual offenders, and the apprehension, segregation and punishment of the latter.' (*People* v. *Palares* (1952) 112 Cal.App.2d Supp. 895, 900 . . .; *People* v. *Carskaddon, supra,* [49 Cal.2d 423 (318 P.2d 4)] ; *People* v. *Moore* (1955) 137 Cal.App.2d 197, 199 . . .; *People* v. *Thompson* (1959) 167 Cal.App.2d 727, 733

---

[10]Education Code section 10609 provides: "All pupils shall comply with the regulations, pursue the required course of study, and submit to the authority of the teachers of the schools."

[11]Penal Code section 272 provides: "Every person who commits any act or omits the performance of any duty, which act or omission causes or tends to cause or encourage any person under the age of 21 years to come within the provisions of Sections 600, 601, or 602 of the Welfare and Institutions Code or which act or omission contributes thereto, or any person who, by any act or omission, or by threats, commands, or persuasion, induces or endeavors to induce any person under the age of 21 years or any ward or dependent child of the juvenile court to fail or refuse to conform to a lawful order of the juvenile court, or to do or to perform any act or to follow any course of conduct or to so live as would cause or manifestly tend to cause any such person to become or to remain a person within the provisions of Sections 600, 601, or 602 of the Welfare and Institutions Code, is guilty of a misdemeanor . . ."

. . .)'' (229 Cal.App.2d at pp. 623-624. See in addition to cases cited, *In re Sheridan* (1964) 230 CalApp.2d 365, 371 [40 Cal.Rptr. 894].) It cannot be assumed that the division of former section 647a into two sections in 1967 (see fn. 7, above) was intended to broaden its scope. The 1967 legislation is found in Senate Bill 324, which bears the following Legislative Counsel's digest: ''. . . Renumbers the provision *deferring* [*sic*] the crime of vagrancy by loitering about school or public places at or near which any children attend or normally congregate.''

It is unnecessary to determine the scope of the purpose or intent contemplated by *Huddleson*. On the one hand, if construed as embracing the purpose or intent to commit crime for which opportunity may be discovered, the statute may still be subject to overbreadth within the principles discussed above. On the other hand, it conceivably may be limited to offenses against the class it is designed to protect, and yet cover also the purpose or intent to commit other than sexual offenses against a child. This construction would embrace the charges the People seek to find in the allegations of their complaint. Since these charges must fail for other reasons, it is unnecessary to resolve the last-mentioned distinction, and it will be assumed that contributing to the delinquency of a minor, in a manner other than by prohibited sexual conduct, is properly embraced within the construction of the statute upheld by *Huddleson*.

In the first place, the thrust of the leaflet (see fn. 4, *supra*) appears to be to encourage those students interested in accomplishing the stated aims to attend a meeting. The allegations of the complaint fail to show that the meeting was to be held during school hours. The recital that those already involved were organizing a strike and other activities on a school day only indirectly indicates an intention to encourage those addressed to absent themselves from school in the future. It is significant that from all that appears in the record, including the prosecution's memorandum in opposition to the issuance of the writ, the question of truancy, if it arose at all below, must have arisen at oral argument. The crime report which mentions failure to obey warnings to stay off the campus and the disturbances occasioned by the gathering of interested students in no way suggests the occurrence of the criminal act now advanced on appeal. It is not charged that the petitioner was present as a Pied Piper presently luring the students away from their books and teachers. From all

that appears the actual confrontations were before school (8:25 a.m.), or at times when students may be expected to have lunch periods (11:25. a.m. to 1:25 p.m.). (Cf. *Katzev* v. *County of Los Angeles, supra,* 52 Cal.2d 360, 367.)

In the second place, it is questionable whether any offense under Penal Code section 272 can be demonstrated. An habitual truant is defined by the law of this state as one "who has been reported as a truant three or more times." (Ed. Code, § 12403.) In order to be first reported as a truant, a student must be "absent from school without valid excuse more than three days or tardy in excess of 30 minutes on each of four or more days in one school year." (*Id.,* § 12401.) Second and further offenses on one or more days shall be reported as truancy (*id.,* § 12402). It is obvious that one day's absence does not make a student an habitual truant. Whether it tends to or not does not depend on the acts of the persuader, but on the acts of the student in absenting himself on other occasions. The Legislature, by the use of the term "habitual truant" in section 12408 of the Education Code and in section 601 of the Welfare and Institutions Code, has prescribed the interference with school attendance which will subject the student to the jurisdiction of the juvenile court. Any lesser interference with attendance is not cognizable under section 601, and therefore activities associated therewith should not subject petitioner to direct or indirect criminal liability under Penal Code section 272. Nor can encouragement, if it be such, of a student to absent himself on one day be considered as contributing to his persistent or habitual refusal to obey the proper orders or direction of his school authorities. One swallow does not make a summer. Hand-bills for a circus, or athletic event, or invitations to see a patriotic parade may all cause or encourage an absence from school. To designate the invitor as a criminal who is contributing to the delinquency of a minor transcends the provisions of law upon which the People rely.

Thirdly: "Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial. [Citations.]" (*In re Hess* (1955) 45 Cal.2d 171, 175 [288 P.2d 5]. See also, *People* v. *Norris* (1967) 254 Cal.App. 2d 296, 300-302 [62 Cal.Rptr. 66]; *People* v. *Clenney* (1958) 165 Cal.App.2d 241, 253-254 [331 P.2d 696]; *People* v. *Lamanuzzi* (1926) 77 Cal.App. 301, 305 [246 P. 557]; *Gregory* v.

*Chicago* (1969) 394 U.S. 111, 112 [22 L.Ed.2d 134, 136, 89 S.Ct. 946]; and *Thornhill* v. *Alabama, supra,* 310 U.S. 88, 96 [84 L.Ed. 1093, 1099]; but cf. *People* v. *Codina* (1947) 30 Cal.2d 356, · 358-359 [181 P.2d 881].) If the petitioner is to be required to defend against a charge of loitering with intent to contribute to the delinquency of the students by encouraging their truancy, such a charge should have been framed more directly than by the innuendo developed from a phrase in the leaflet.

Finally, the construction advocated by the People runs afoul of the protections offered by the First and Fourteenth Amendments and must yield. The facts alleged do not show advocacy which is directed to inciting or producing imminent lawless action—absentation from school. At the most the leaflet suggests that the students come to a meeting and join a group which is organizing a student strike on a date more than three weeks away. "Accordingly, we are here confronted with a statute which . . . as applied, purports to punish mere advocacy and to forbid, on pain of criminal punishment, assembly with others, merely to advocate the described type of action." (See *Brandenburg* v. *Ohio* (1969) 395 U.S. 444, 449 [23 L.Ed.2d 430, 435, 89 S.Ct. 1827].) The attempted application of the loitering statute to the foregoing facts "falls within the condemnation of the First and Fourteenth Amendments." (*Id.* See also, *American Civil Liberties Union* v. *Board of Education, supra,* 55 Cal.2d 167, 179; and *Katzev* v. *County of Los Angeles, supra,* 52 Cal.2d 360, 366. Cf. *People* v. *Davis, supra,* 68 Cal.2d 481, 484-486.)

In concluding several general concepts which underlie and qualify this decision should be noted.

"The principal use to which the schools are dedicated is to accommodate students during prescribed hours for the purpose of certain types of activities. Among those activities is personal intercommunication among the students. This is not only an inevitable part of the process of attending school. It is also an important part of the educational process. A student's rights therefore, do not embrace merely the classroom hours. When he is in the cafeteria, or on the playing field, or on the campus during the authorized hours, he may express his opinions, even on controversial subjects like the conflict in Vietnam, if he does so 'without materially and substantially interfering with appropriate discipline in the operation of the school' and without colliding with the rights of others. *Burnside* v. *Byars, supra,* at p. 749 [363 F.2d 744]. But conduct by

the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guaranty of freedom of speech.'' (*Tinker* v. *Des Moines Independent Community School Dist., supra*, 393 U.S. 503, 512 [21 L.Ed.2d 731, 741].)

''The rights of students and teachers to express their views on school policies and governmental actions relating to schools, and the power of school authorities to regulate political activities of students and faculty, are of peculiar concern to our state and nation today. Education is in a state of ferment, if not turmoil. When controversies arising from or contributing to this turbulence are brought before the courts, it is imperative that the courts carefully differentiate in treatment those who are violent and heedless of the rights of others as they assert their cause and those whose concerns are no less burning but who seek to express themselves through peaceful, orderly means. In order to discourage persons from engaging in the former type of activity, the courts must take pains to assure that the channels of peaceful communication remain open and that peaceful activity is fully protected.'' (*Los Angeles Teachers Union* v. *Los Angeles City Board of Education, supra*, 71 Cal.2d 551, 565.)

The right to communicate includes the right to hear and receive (*Huntley* v. *Public Utilities Com., supra*, 69 Cal.2d 67, 72). Pamphleteers, however, cannot be violent and heedless of the rights of others, and must bow to appropriate discipline of the school. Nevertheless, the provisions of section 653g of the Penal Code cannot be constitutionally construed to block the channels of peaceful communication or stifle peaceful activity.

A society which recognizes the right of personal and corporate wealth to hire experts and lobbyists to avoid contributing through taxes more than necessary toward a controversial undeclared war cannot, without widening the generation gap, stifle those who, through ostensibly legal means, seek to organize and advise students in opposition to an existing governmental policy which they are expected to defend at the sacrifice of life and limb.

The judgment is reversed, and the trial court is directed to issue the writ of prohibition on the grounds that the facts stated in the complaint do not constitute a public offense under the provisions of section 653g of the Penal Code, and

contain matter, which if true, would constitute a legal justification for the conduct charged.

Molinari, P.J., concurred.

ELKINGTON, J.—I dissent; I cannot believe that the First Amendment extends protection to an adult who, in defiance of the law of California, goes upon school grounds and there endeavors to foment a student strike.

On several occasions on school grounds Mandel, 23 years of age, passed out handbills to high school students stating, among other things, that at each of several Alameda County high schools *"groups are organizing a student strike* and other activities against the war, the draft and racism *for April 26."* It continued, *"If you want to help,* if you need help with the draft, or if you just have questions about the war, *there'll be a meeting."* (Italics added.) The only reasonable interpretation of Mandel's conduct and handbill is that he was soliciting the students to help organize, and join in, a school strike for, or commencing on, April 26, 1968. Such conduct is unlawful.

Education Code section 10609 provides: "All pupils shall comply with the regulations, pursue the required course of study, and submit to the authority of the teachers of the schools."

Penal Code section 602.9 states: "Any person who comes . . . upon any school ground . . . without lawful business thereon, and whose presence or acts interfere with the peaceful conduct of the activities of such school or disrupt the school or its pupils or school activities, and who remains there, after being asked to leave [as in the case before us] . . . is guilty of a misdemeanor."[1]

In my view the evidence presented to the municipal court indicated Mandel's probable intent to violate Penal Code section 602.9. Since the handbill established that Mandel was acting in concert with others in attempting to organize a school strike, the magistrate could reasonably conclude that his loitering was an object, or overt act, of a conspiracy to commit a crime (Pen. Code, §§ 182.1, 602.9) and to commit an act obstructing "the due administration of the laws" (Pen. Code, § 182.5; Ed. Code, § 10609).

---

[1]In 1968, effective after the subject Penal Code section 653 proceedings were taken against Mandel, Penal Code section 602.9 was amended to define the term "lawful business."

Furthermore, it may reasonably be concluded that Mandel's acts were violative of Penal Code section 272, in that they tended to contribute to the delinquency of minors. Section 272, as relevant here, provides: "Every person who commits any act . . ., which act . . . causes or tends to cause or encourage any person under the age of 21 years to come within the provisions of Sections . . . 601 . . . of the Welfare and Institutions Code or which act . . . contributes thereto, or any person who by any act . . ., or by . . . persuasion, induces or endeavors to induce any person under the age of 21 years . . . to do or to perform any act or to follow any course of conduct . . . as would cause or manifestly tend to cause any such person to become or to remain a person within the provisions of Section . . . 601, . . . of the Welfare and Institutions Code, is guilty of a misdemeanor. . . ." As we have seen, high school students have a statutory duty to attend school (Ed. Code, § 10609). Three unexplained absences constitute truancy; five such absences may result in a student being declared an habitual truant (Ed. Code, §§ 12401-12403). Habitual truancy is a ground for arrest (Ed. Code, § 12405).

Welfare and Institutions Code section 601 provides: "Any person under the age of 21 years who persistently or habitually refuses to obey the reasonable and proper orders or directions of his parents, guardian, custodian or school authorities, or who is beyond the control of such person, *or any person who is a habitual truant from school within the meaning of any law of this State,* or who from any cause is in danger of leading an idle, dissolute, lewd, or immoral life, is within the jurisdiction of the juvenile court which may adjudge such person to be a ward of the court." (Italics added.)

It requires little argument to demonstrate that encouraging students to engage in a school strike at least *"tends"* (see Pen. Code, § 272) to cause such students to become habitual truants (Welf. & Inst. Code, § 601) and therefore juvenile delinquents.

Much of Mandel's argument is given over to what he calls his First Amendment right to protest the war, the draft, and racism by the means here used. Such an argument has been set at rest repeatedly by decisions of the United States Supreme Court.

In *Giboney* v. *Empire Storage & Ice Co.,* 336 U.S. 490, 498 [93 L.Ed. 834, 841, 96 S.Ct. 684], it is stated: "It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an

integral part of conduct in violation of a valid criminal statute. . . ."

In *Cox* v. *Louisiana*, 379 U.S. 559 [13 L.Ed.2d 487, 85 S.Ct. 476], the court was concerned with a criminal statute proscribing a parade near a courthouse for the purpose, among other things, of impeding the administration of justice or influencing a judge or juror. The court said (p. 564 [13 L.Ed. 2d at p. 492]) : "We hold that this statute on its face is a valid law dealing with conduct subject to regulation so as to vindicate important interests of society and that the fact that free speech is intermingled with such conduct does not bring with it constitutional protection."

*Tinker* v. *Des Moines Independent Community School Dist.*, 393 U.S. 503 [21 L.Ed.2d 731, 741, 89 S.Ct. 733], discussing the relation of student behavior to the First Amendment, tells us: "But conduct by the student, in class or out of it, which for any reason—whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guaranty of freedom of speech. [Citation.] "

I conclude that it is constitutionally proper for California to forbid, and to penalize, conduct such as that of Mandel in the case before us, even though such conduct be an admixture of unlawfulness and what might otherwise be activity protected by the First Amendment.

For yet another reason, as indicated by the majority, Mandel claims constitutional immunity from prosecution. He contends that Penal Code section 653g, punishing one for "loitering" in certain areas, is unconstitutionally vague and overbroad. This contention also, to the writer of this dissent, appears to be without merit.

The same argument was raised in the case of *In re Huddleson*, 229 Cal.App.2d 618 [40 Cal.Rptr. 581] (hear den.). There the court was dealing with Penal Code section 647a, subdivision (2), repealed 1967, which was the predecessor statute, containing precisely the same language, to Penal Code section 653g, added 1967. *Huddleson* holds the word "loiter" in the context of sections 647a, subdivision (2), and 653g to have the meaning of "lingering about schools and public places for the purpose or with the intent of effectuating some criminal act." The court said:

"In the instant case, the challenges made to the constitutionality of the subdivision under attack center about the

use of the word 'loiter' in the statute. In essence they assert that the word is of a broad and all-embracing character as to encompass innocent as well as objectionable actions and thus impose an unreasonable proscription upon the conduct of the public at large. The word 'loiter' has been defined to mean 'To be slow in moving; delay; linger; saunter; lag behind' (Webster's New International Dictionary (2d ed.) ; see *State* v. *Starr* (1941) 57 Ariz. 270 [113 P.2d 356, 357] ) or 'to linger idly by the way, to idle' (*Phillips* v. *Municipal Court* (1938) 24 Cal.App.2d 453, 455 [75 P.2d 548] ). While taken by itself and in its broad meaning the term may carry no criminal implications, nevertheless as employed in a penal statute and considered in such statutory context, it may have a sinister, wrongful or criminal import. (*In re Cregler, supra,* 56 Cal.2d 308, 311-312; . . .)

''Thus in *Cregler, supra,* the Supreme Court upheld the constitutionality of former Penal Code section 647, subdivision 4, which made it a misdemeanor for any person known to be a pickpocket, thief, burglar or confidence operator and having no visible or lawful means of support, to loiter around certain specified public places or assemblies. The court held that the word 'loiter' as used in the statute there under consideration 'has a sinister or wrongful as well as a reasonable definite implication. As proscribed by the statute the word ''loiter'' obviously connotes lingering in the designated places for the purpose of committing a crime as opportunity may be discovered.' (56 Cal.2d at p. 312.) '' (Pp. 621-622.)

''We are persuaded that as used in the statute now before us the term 'loiter' was intended to have a restricted rather than a general meaning and that as so employed it has here, as in the statute under consideration in *Cregler,* 'a sinister or wrongful as well as a reasonable definite implication.' (*In re Cregler, supra,* 56 Cal.2d 308, 312.) *We are of the opinion that the word 'loiter' was intended to proscribe lingering about schools and public places for the purpose or with the intent of effectuating some criminal act. . . .*'' (P. 623; italics added.)

''Therefore as we construe the statute before us, persons who merely sit on park benches, loll on public beaches, pause in the vicinity of schools or linger in the many public areas frequented by children cannot be reasonably considered as loitering within the compass of the statute. It is only when loitering is of such a nature that from the totality of the person's actions and in the light of the prevailing circum-

stances, it may be reasonably concluded that it is being engaged in 'for the purpose of committing a crime as opportunity may be discovered' (*In re Cregler, supra*) that such conduct falls within the statute. We therefore hold that the term loiter has a clear and reasonable definite significance in the context of the statute, that it is not so vague and indefinite as to offend constitutional guaranties and that the statute so construed does not invade, deny or abridge personal rights and liberties. . . .'' (Pp. 625-626.)

Each of the several counts of the misdemeanor complaint against Mandel charges that he ''did loiter about a school and public place at and near which school children attend.'' Following the authority of *Huddleson,* this language as a matter of law must be deemed to read, and have the meaning, that he ''did loiter about a school and public place at and near which school children attend *for the purpose or with the intent of effectuating some criminal act.*''

So construed, Mandel's argument that the subject complaint is vague and uncertain is without merit.

And so construed, the complaint sufficiently states facts constituting a public offense. Accordingly, the municipal court properly overruled Mandel's demurrer. (See Pen. Code, § 1004, subd. 4.)

It is argued that a required specific intent must be alleged in an accusatory pleading; that it may not be implied by operation of law. This does not appear to be the rule. One may be charged with a crime in the language of the statute declaring the matter to be a public offense. Thus in charging theft it is sufficient to allege that the defendant ''unlawfully took the . . . property of another'' (Pen. Code, § 952) ; implied by law is the further allegation that the taking was with the specific ''intent to permanently deprive the owner of the property.'' (See 1 Witkin, Cal. Crimes (1963) p. 357.) Likewise in the crimes of robbery and assault it is sufficient to allege that the defendant ''robbed'' (*People* v. *Kent,* 90 Cal. App.2d 77, 79 [202 P.2d 376]) and ''did . . . assault'' another (*People* v. *Macias,* 77 Cal.App.2d 71, 78 [174 P.2d 895] ; *People* v. *Mitchell,* 40 Cal.App.2d 204, 208 [104 P.2d 545]). Implied by law are the respective required specific intents ''to steal'' (*People* v. *Ford,* 60 Cal.2d 772, 793 [36 Cal.Rptr. 620, 388 P.2d 892]) and ''to cause injury'' (*People* v. *Coffey,* 67 Cal.2d 204, 221-222 [60 Cal.Rptr. 457, 430 P.2d 15] ; *People* v. *Fanning,* 265 Cal.App.2d 729, 734 [71 Cal.Rptr. 641]).

Nor is there merit to the contention that an accusatory pleading must expressly state the nature of the required specific intent; otherwise the accused may be without knowledge of the true nature of the charge against him. Under our present day procedures such information is fully available to an accused by transcript of grand jury or preliminary proceedings, or by discovery.

I would affirm the judgment of the superior court.

The petition of the real party in interest and respondent for a hearing by the Supreme Court was denied December 3, 1969. Burke, J., was of the opinion that the petition should be granted.