[L. A. No. 29637. In Bank. June 30, 1969.]

LOS ANGELES TEACHERS UNION, LOCAL 1021, AMERICAN FEDERATION OF TEACHERS et al., Plaintiffs and Appellants, v. LOS ANGELES CITY BOARD OF EDUCATION et al., Defendants and Respondents.

Levy, DeRoy, Geffner & Van Bourg, and Leo Geffner for Plaintiffs and Appellants.

John D. Maharg, County Counsel, Alfred Charles De Flon, Deputy County Counsel, and Jerry F. Halverson for Defendants and Respondents.

PETERS, J.—The Los Angeles Teachers Union, Local 1021, American Federation of Teachers, and certain of its officers, on behalf of all its officers and members, appeal from a judgment of the superior court denying their petition for writ of mandate. ▇ Plaintiffs[1] seek to compel defendants to cease and desist from enforcing any rule or regulation prohibiting employees of the Los Angeles City School Districts or the Los Angeles City Board of Education from circulating for signatures during duty-free lunch periods on school premises a petition relating to the financing of public education and addressed to various concerned public officials. For reasons hereinafter stated, the judgment must be reversed.

On or about January 30, 1967, the union distributed to its representatives for circulation by and to teachers on off-duty time in the elementary and secondary public schools within the school district a brief, respectful petition addressed to the Governor, the State Superintendent of Public Instruction, and the Los Angeles City Board of Education, opposing proposed cutbacks in funds for higher education and imposition

[1]Hereinafter, the term ''plaintiffs'' will be used to refer to teachers who are members of the union rather than to the union itself or its officers.

of tuition at college and university campuses and urging these officials to increase the revenues for public education at all levels to meet soaring enrollments and big city problems.[2]

On February 1, the personnel division of the school district issued a memo to administrators of each school instructing them that circulation of the petition was in conflict with board rule 1276[3] of the Los Angeles City Board of Education rules and that the petition should not be circulated on the school premises, unless provisions of the Civic Center Act[4]

---

[2]The petition reads as follows:

PETITION
FOR
BETTER CALIFORNIA EDUCATION

To: Governor Ronald Reagan; Max Rafferty, State Superintendent of Public Instruction; and the Los Angeles City Board of Education

We, the undersigned certificated employees of the Los Angeles City School Districts, do hereby protest the threatened cutback in funds for higher education and imposition of tuition at college and university campuses.

We further petition you to increase; not cut, the revenues for public education at all levels to meet our soaring enrollments and big city problems—by overhauling our tax structure now, not by violating California's proud claim to free public education for all.

[Spaces for names and addresses]

This petition sponsored by the American Federation of Teachers, Local 1021, and by the AFT College Guild, Local 1521.

*Instructions to School Reps:* Please circulate this petition only on non-instructional time and return to the office in the enclosed envelope not later than February 6th.

[3]Rule 1276 provides that employees may circulate a petition on school premises without permission under the Civic Center Act (see fn. 4, *post*) only when the petition concerns "employer-employee relations" at the school involved, provided that circulation of the petition "[must] not interfere with the performance of any employee's duties or with the conduct of school activities or office business."

There is another rule and a statute that are relevant.

Rule 1267 provides, in pertinent part: "No political activities shall be engaged in on school premises or on property owned by or in the possession or control of the Los Angeles City School Districts, except as provided under the Civic Center Act [see fn. 4, *post*]. . . . Employees shall not engage in such activities during working hours; provided, however, that nothing herein shall be construed to abridge the rights of such employees, at other times, to engage in such activities. (Ed. Code, Sec. 13004)."

Section 13004 of the Education Code provides: "Neither any local legislative body nor any school district governing board shall enact or enforce any ordinance or promulgate or enforce any rule or regulation which limits, during their off-duty hours, the participation of school employees in political activities not prohibited by this code."

[4]The Civic Center Act (Ed. Code, § 16551 et seq.) provides that the governing board of any school district may permit the use of school buildings or grounds for "public, literary, scientific, recreational, educational, or public agency meetings, or for the discussion of matters of general or public interest" (§ 16551) provided that any such permit must

were met. Plaintiffs, rather than attempting to circulate the petition in contravention of this memo, requested permission from defendant Board of Education to circulate the petition during duty-free periods, but such permission was denied.

At the request of a representative of the union, the director of administrative services for the school district agreed to issue a permit under the Civic Center Act (see fn. 4, *ante*) so that plaintiffs could use school facilities to hold meetings shortly after the close of the school day for the purpose of obtaining signatures for the petition. Apparently concluding that such after-hours meetings would not sufficiently enable them to reach all teachers, plaintiffs filed the present action in superior court, seeking, by way of mandamus, permission to circulate their petition in areas, such as lunchrooms and faculty rooms, apart from students and classes during the duty-free lunch period[5] provided for teachers in the Los Angeles schools pursuant to state policy.[6]

During their duty-free lunch period, teachers are not required to render any services for the school district; they are merely required to remain on school premises so that they are available in cases of emergency. Since duty-free lunch periods are staggered in most schools, and since some teachers in faculty rooms or lunchrooms at any given time are engaged in "planning period" work rather than taking their duty-free time, plaintiffs specified that the petition would be circulated only by and to off-duty teachers.

Defendants' arguments in support of their prohibition of the circulation of plaintiffs' petition, which are contained in the written declarations of various administrators in the Los Angeles city school system, and, based on this "expert" testimony, were found to be true by the trial court may be summarized as follows: (1) Circulation of the petition, the subject of which is controversial, will cause teachers to take and

be consistent with the use of the buildings and grounds for school purposes and must not interfere with the regular conduct of school work (§§ 16552, 16557).

[5] In their petition, plaintiffs sought permission to circulate the petition during "non-instructional" time. During the trial they limited their request to duty-free lunch periods, recognizing that not all non-instructional time is duty-free time.

[6] Section 13561.1 of the Education Code provides, in pertinent part: "Recognizing that an adequate lunch period free from duty is essential to the health, morale and efficiency of teachers employed full time in any regular day school, the Legislature declares that it is the policy of the State to encourage school districts to provide for an adequate duty-free lunch period for teachers."

defend opposing political positions, thereby creating discord and lack of harmony which is "foreign to the educational environment" and which will reduce the "cooperation and coordination required" for the proper functioning of the schools. (2) Circulation of the petition in faculty rooms and lunchrooms, which are at any given time used both by teachers on off-duty time and by teachers engaged in required "planning period" work,[7] will disturb and distract teachers in the latter category. (a) Some teachers engaged in "planning period" work will be approached by petition circulators who do not know they are doing such work. These teachers will be distracted from their work at least long enough to explain that they are working and do not wish to be disturbed. Others will be distracted longer since they will take the time either to read and sign the petition or to discuss it before or instead of signing it. (b) Discussions between petition circulators and off-duty teachers will inevitably involve some disagreements and resultant debates. These debates may become noisy and disturb teachers engaged in "planning period" work.

 When, as here, the impairment of First Amendment rights appears, and when, as here, the facts constituting such impairment are not contradicted, the question as to whether such impairment is permissible is one of law and not of fact, and not the subject of such "expert" testimony. When the effective exercise of First Amendment rights relating to speech is impaired by governmental regulation, a court must weigh the extent of the impairment against both the importance of the governmental interest and the substantiality of the threat which the forbidden speech or related activity poses to that interest. Both alternatives available to the government—to achieve its regulatory objective in a manner less restrictive of those rights—and alternatives available to the speaker—to exercise his right to effective communication in a manner less hostile to the governmental interest —must be appraised. The more substantial the infringement of First Amendment rights is, the more compelling the governmental interest and the more ominous the threat to that interest must be. (E.g., *United States* v. *O'Brien*, 391 U.S. 367, 376-377 [20 L.Ed.2d 672, 679-680, 88 S.Ct. 1673]; *Thomas* v. *Collins*, 323 U.S. 516, 530 [89 L.Ed. 430, 440, 65 S.Ct.

---

[7]Four or five of the teachers' six hours of work each day are normally devoted to classroom instructional work. The remaining "planning period" time is used by the teachers either to organize and plan their lessons or, occasionally, to render services specified by the principal.

315]; *Huntley* v. *Public Utilties Com.*, 69 Cal.2d 67, 74 [69 Cal.Rptr. 605, 442 P.2d 685]; *Bagley* v. *Washington Township Hospital Dist.*, 65 Cal.2d 499, 501-502, 505-509 [55 Cal. Rptr. 401, 421 P.2d 409]; *Wollam* v. *City of Palm Springs*, 59 Cal.2d 276, 284-288 [29 Cal.Rptr. 1, 379 P.2d 481].)[8]

█ In such cases the usual deference by courts to the wisdom and judgment of legislators (e.g., *Eye Dog Foundation* v. *State Board of Guide Dogs for the Blind*, 67 Cal.2d 536, 544-545, 547 [63 Cal.Rptr. 21, 432 P.2d 717]) and administrators acting in a quasi-legislative capacity (e.g., *Pitts* v. *Perluss*, 58 Cal.2d 824, 832 [27 Cal.Rptr. 19, 377 P.2d 83]) is impermissible. (Eg., *Ralphs Grocery Co.* v. *Reimel*, 69 Cal. 2d 172, 179-180 [70 Cal.Rptr. 407, 444 P.2d 79]; cf. *Pickering* v. *Board of Education, supra,* 391 U.S. 563, 565, 568-573 [20 L.Ed.2d 811, 815, 817-820, 88 S.Ct. 1731].) Such deference would amount to an abdication of responsibility for determining whether a regulation has exceeded constitutional limitations. (Cf. *Rosenfield* v. *Malcolm*, 65 Cal.2d 559, 563 [55 Cal. Rptr. 505, 421 P.2d 697].) █ (In addition, the reviewing court in free speech cases must make an independent examination of the whole record. (*Zeitlin* v. *Arnebergh*, 59 Cal.2d 901, 909 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707].))

█ Teachers, like others, have the right to speak freely

---

[8]Regulation of the content of speech is always suspect. Therefore, in cases involving such regulation the government must demonstrate that the speech to be proscribed poses a "clear and present danger" of the occurrence of a grave evil which the government is empowered to prevent. (E.g., *Dennis* v. *United States*, 341 U.S. 494, 502-511 [95 L.Ed. 1137, 1148-1153, 71 S.Ct. 857]; *Katzev* v. *County of Los Angeles*, 52 Cal.2d 360, 366 [341 P.2d 310]; see dissenting opinion of Mosk, J. in *Weaver* v. *Jordan*, 64 Cal.2d 235, 252 [49 Cal.Rptr. 537, 411 P.2d 289].) This court also requires a showing of "clear and present danger" when the restriction of First Amendment rights "is of unlimited potential scope and the enactment is so broad as to impose a complete ban of expression and communication through a specified medium, . . ." (*Wirta* v. *Alameda-Contra Costa Transit Dist.*, 68 Cal.2d 51, 60 [64 Cal.Rptr. 430, 434 P.2d 982] [billboards in buses], *Weaver* v. *Jordan, supra,* 64 Cal.2d 235, 243 [subscription television].)

On the other extreme are cases in which the government regulates or proscribes certain conduct for valid and substantial reasons unrelated to incidental communicative aspects of such conduct. In such cases, the regulation is valid if the incidental restriction on First Amendment rights is no greater than is essential to further an important governmental interest, at least where the claimant of First Amendment protection has meaningful alternatives available to him for carrying out his desired communication. (E.g., *United States* v. *O'Brien, supra,* 391 U.S. 367, 376-377 [20 L.Ed.2d 672, 679-680] [prohibition of draft card burning]; authorities cited in *Walker* v. *City of Birmingham*, 388 U.S. 307, 315-316 [18 L.Ed.2d 1210, 1216-1217, 87 S.Ct. 1824] [regulations of mass demonstrations in public places to preserve public safety and order].)

and effectively on public questions[9] as well as the "inseparable" and "cognate" (*Thomas* v. *Collins, supra,* 323 U.S. 516, 530 [89 L.Ed. 430, 440] ; see also, *Brown* v. *Louisiana,* 383 U.S. 131, 141-142 [15 L.Ed.2d 637, 644-645, 86 S.Ct. 719]) "right . . . to petition the Government for a redress of grievances" (U.S. Const., Amend. I). They do not "shed" these rights "at the schoolhouse gate." (*Tinker* v. *Des Moines Independent Community School Dist.* (U.S. Supreme Court, February 24, 1969) 393 U.S. 503, 506 [21 L.Ed.2d 731, 737, 89 S.Ct. 733].) On the other hand, school officials have "comprehensive authority . . . consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools" and the "special characteristics of the school environment" affect the exercise of First Amendment rights on school premises. (*Id.,* at p. 507 [21 L.Ed.2d at p. 738].) Thus, we must strike "a balance between the interests of the teacher, as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." (*Pickering* v. *Board of Education, supra,* 391 U.S. 563, 568 [20 L.Ed.2d 811, 817].)

The government has no valid interest in restricting or prohibiting speech or speech-related activity simply in order to avert the sort of disturbance, argument or unrest which is inevitably generated by the expression of ideas which are controversial and invite dispute. The danger justifying restriction or prohibition must be one which "rises far above public inconvenience, annoyance, or unrest." (*Terminiello* v. *Chicago,* 337 U.S. 1, 4 [93 L.Ed. 1131, 1134, 69 S.Ct. 894].) This is so because the free expression of ideas concerning controversial matters is essential to our system of government. "[I]t is only through free debate and free exchange of ideas

[9]Teachers have a First Amendment right to "comment on matters of public interest in connection with the operation of the public schools. . . . [T]he question whether a school system requires additional funds is a matter of legitimate public concern. . . . [I]t is essential that [teachers] be able to speakout freely on such questions. . . ." (*Pickering* v. *Board of Education, supra,* 391 U.S. 563, 568, 571-572 [20 L.Ed.2d 811, 817, 818-819].)

It is settled that since the right of free speech "is worthless in the absence of a meaningful method of its expression," freedom of speech "contemplates effective communication." (*Wollam* v. *City of Palm Springs, supra,* 59 Cal.2d 276, 284; accord, *Thornhill* v. *Alabama,* 310 U.S. 88, 96 [84 L.Ed. 1093, 1099, 60 S.Ct. 736].) This merely means that the right to speak is not an abstract right divorced from the question of an effective medium or forum for expression. As discussed earlier in this opinion, the method of expression as well as the expression itself is subject to limitation or regulation which is constitutionally reasonable.

that government remains responsive to the will of the people and peaceful change is effected. . . .'

"Accordingly a function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger." (*Id.*) As Mr. Justice Brandeis recognized, to avert violence and to preserve stable government there must be "the opportunity to discuss freely supposed grievances and proposed remedies." (Concurring opinion in *Whitney* v. *California*, 274 U.S. 357, 375 [71 L.Ed. 1095, 1106, 47 S.Ct. 641].)

The petition for redress of grievances epitomizes the use of freedom of expression to keep elected officials responsive to the electorate, thereby forestalling the violence which may be practiced by desperate and disillusioned citizens. This is undoubtedly why it receives explicit First Amendment protection in addition to the protection afforded to freedom of expression generally. Therefore, although in a particular case petitioning may pose a serious threat to a valid and compelling governmental interest because of its nonspeech aspects (cf. *United States* v. *O'Brien, supra*, 391 U.S. 367, 376-377 [20 L.Ed.2d 672, 679-680]), making limited regulation permissible, its inherently disruptive character provides no basis for valid regulation. Otherwise, as with speech generally, its constitutional protection would be hollow indeed.

Tolerance of the unrest intrinsic to the expression of controversial ideas is constitutionally required even in the schools. "In order for . . . school officials to justify prohibition [on school premises] of a particular expression of opinion, [they] must be able to show that [their] action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint." (*Tinker* v. *Des Moines Independent Community School Dist., supra*, 393 U.S. 503, 509 [21 L.Ed.2d 731, 739].) "Any word spoken, in class, in the lunchroom or on campus, that deviates from the views of another person, may start an argument or cause a disturbance. But our Constitution says we must take this risk. . . ."; (*Id.*, at p. 508 [21 L.Ed.2d at p. 739].) School officials must produce "facts which might reasonably have led [them] to forecast *substantial disruption of or material interference with school activities*." (*Id.*, at p. 514 [21 L.Ed.2d at p. 742], italics added.) Similarly, in order to justify a restraint on the political activ-

ities of its teachers, such officials must demonstrate that the restraint is a practical necessity in order to meet a "compelling public need to protect the efficiency and integrity of the public service." (*Fort* v. *Civil Service Com.*, 61 Cal.2d 331, 338 [38 Cal.Rptr. 625, 392 P.2d 385] ; *Bagley* v. *Washington Township Hospital Dist., supra,* 65 Cal.2d 499, 505.)

. Turning to the present case, we examine first plaintiffs' rights and interests. As defendants apparently concede, plaintiffs have not only the right to discuss with fellow teachers issues such as those raised in the petition but also the more specific right to engage in such discussions in faculty rooms and lunchrooms during duty-free periods. Plaintiffs also have the right to "speak out freely" on such issues, which encompasses the right to communicate effectively. (Compare *Pickering* v. *Board of Education, supra,* 391 U.S. 563, 572 [20 L.Ed.2d 811, 819], with *Wollam* v. *City of Palm Springs, supra,* 59 Cal.2d 276, 284 [see fn. 9, *ante*].) Where, as here, government is the desired audience, the First Amendment provides a specific constitutionally protected means for communicating effectively, the petition for redress of grievances.

Thus, the problem is whether, in order to speak freely and effectively to the government on the question of financing public education, plaintiffs have the right to combine with their *discussions* in faculty rooms and lunchrooms the circulation of a *petition.* It cannot be denied that the most effective forum in which and time at which plaintiffs can communicate with fellow teachers as a prelude to communicating with the government via petition are the school premises and the hours during which teachers are both gathered together there and free to converse with one another. Defendants have introduced no evidence showing that plaintiffs have any acceptable alternative. The fact that plaintiffs have commenced and pursued the present action and have rejected the alternative of circulating their petition at a meeting on school premises after school hours,[10] in the absence of any evidence that plaintiffs' motive is something other than a desire for effective communication (e.g., a motive to disrupt school activities), indicates a judgment by plaintiffs that if they are deprived of the forum they seek for circulation of their petition the effectiveness of their communication will be substantially impaired. Since plaintiffs are vitally interested in communi-

[10]Obviously, the alternative of circulating the petition off school premises is even less promising for plaintiffs.

cating effectively, we should accept their judgment as likely to be well informed.

We must turn, then, to a consideration of defendants' asserted interest in prohibiting circulation of the petition as proposed by plaintiffs. First, defendants claim that the prohibition is necessary to preserve harmony and cooperation among teachers. They fear that circulation of the controversial petition involved in the present case will cause teachers to take and defend opposing positions and possibly to split into factions. This, in substance, is the finding of the trial court.

Harmony among public employees is undoubtedly a legitimate governmental objective as a general proposition (see *Pickering* v. *Board of Education, supra,* 391 U.S. 563, 569-570 [20 L.Ed.2d 811, 817-818]); however, as we have seen, government has no interest in preventing the sort of disharmony which inevitably results from the mere expression of controversial ideas. (*Tinker* v. *Des Moines Independent Community School Dist., supra,* 393 U.S. 503, 509 [21 L.Ed.2d 731, 739]; *Terminiello* v. *Chicago, supra,* 337 U.S. 1, 4 [93 L.Ed. 1131, 1134]; *Wirta* v. *Alameda-Contra Costa Transit Dist., supra,* 68 Cal.2d 51, 61-62.) It cannot seriously be argued that school officials may demand a teaching faculty composed either of unthinking "yes men" who will uniformly adhere to a designated side of any controversial issue or of thinking individuals sworn never to share their ideas with one another for fear they may disagree and, like children, extend their disagreement to the level of general hostility and uncooperativeness. Yet it is precisely the inevitable disharmony resulting from the clash of opposing viewpoints that defendants admittedly seek to avoid in the present case.

Defendants' objection to the circulation of the petition during off-duty hours on school premises fails to take into account the likelihood that the same sort of factionalism which may be produced by circulation of the petition as plaintiffs propose will also result from circulation of the petition off the school premises or after school hours. In fact, friction among teachers may be worse if plaintiffs are forced to "buttonhole" individual teachers off school premises or after hours. Moreover, the sort of friction defendants allegedly seek to prevent will arise even from permissible *discussion* among teachers of issues such as those raised in the petition under consideration. Thus, even if prevention of the disharmony resulting from the mere expression of controversial ideas were a

legitimate governmental objective, defendants' prohibition of circulation of the petition involved in this case appears ill-fitted to serve that objective.

Second, defendants claim the prohibition is necessary in order to prevent the disturbance of teachers engaged in "planning period" work in faculty rooms and lunchrooms. Defendants purport to fear that such teachers will be interrupted by petition circulators who do not realize these teachers are working rather than relaxing or eating. Plaintiffs have explicitly stated that circulation of the petition would only extend to and be conducted by teachers who are off duty. Therefore, it must be assumed that plaintiffs, if permitted to circulate the petition, will determine at the outset of any personal solicitation whether the teacher whose signature is desired is on duty or off. It must be assumed further that if the former is indicated, the teacher will forthwith be left alone.

Whatever disturbances of working teachers do occur will inevitably be *de minimus* for three reasons: (1) Most teachers engaged in "planning period" work undoubtedly are reading, writing, or doing something else which makes it readily apparent to other teachers that they are working rather than relaxing or eating. Thus, it is hard to imagine that in any material number of cases the petition circulator will even have to ask "are you working?" (2) In the few exceptional cases, virtually no time will be consumed by the foregoing question and the affirmative response thereto. (3) In those rare instances of a working teacher being distracted from his work for more than a few moments, perhaps because he wishes to discuss the petition, the teacher can be expected to make up the lost time later in the day or week.

It should be added that if defendants wish to protect working teachers in faculty rooms and lunchrooms from interruptions, they might promulgate regulations of general applicability for that purpose. However, a prohibition only of interruptions due to circulation of petitions is an unjustifiable discrimination against one type of speech protected by the First Amendment. (Cf. *Wirta* v. *Alameda-Contra Costa Transit Dist., supra,* 68 Cal.2d 51, 55-58.) For example, as matters now stand, there is apparently no prohibition against an off-duty teacher approaching a working teacher in the faculty room and asking "how did you like that baseball game last night?" or "do you want to play a hand of bridge and finish your work later?"

Defendants also purport to fear that even if petition circu-

lators discuss the petition only with off-duty teachers, there will be lengthy and noisy debates which will disturb nearby teachers engaged in ''planning period'' work. Defendants admit that teachers discuss political and other matters in the lunchrooms and faculty rooms, and there is no showing that conversations concerning the petition will generate any more noise or disturbance than the usual discussions of politics and other matters. If ''vocal and sometimes noisy disagreements'' resulting from lengthy debates on political issues are permissible in the lunchrooms and faculty rooms where no petition is involved, as defendants apparently concede to be the case, no legitimate reason appears for stifling such discussion only when circulation of a petition is involved. An alternative less offensive to plaintiffs' First Amendment rights (see *Bagley* v. *Washington Township Hospital Dist.*, *supra*, 65 Cal.2d 499, 506-507) appears to be available: a regulation prohibiting unduly raucus discussions of any sort in rooms where some teachers are engaged in ''planning period'' work.

Finally, it cannot escape our attention that all of defendants' objections to plaintiffs' proposal are objections that apply to the circulation of any controversial petition among teachers on school premises. By permitting the circulation of petitions concerning employer-employee relations on school premises *provided* that this does not interfere with teachers' work or school activities,[11] defendants apparently recognize that the circulation of a controversial petition as plaintiffs propose will not *inevitably* result in intolerable disruption of school work.

Therefore, even if the findings be given their widest interpretation they are insufficient as a matter of law. Defendants have failed to demonstrate the existence of ''facts which might reasonably have led [them] to forecast *substantial disruption of or material interference with school activities*'' (*Tinker* v. *Des Moines Independent Community School Dist.*, *supra*, 393 U.S. 503, 514 [21 L.Ed.2d 731, 742], italics added) as a result of plaintiffs' proposed activity.[12] Rather, defendants have shown only that they reasonably ap-

---

[11]See rule 1276, discussed in footnote 3, *ante*.

[12]It is apparent that the trial court, in denying plaintiffs' petition for writ of mandate, did not apply this standard. In its conclusions of law the court stated that school authorities could forbid on school premises circulation of petitions, speech, and related activities protected by the First and Fourteenth Amendments if such activities ''would *tend* to reduce the effectiveness of the schools in providing and dispensing education.'' (Italics added.)

prehended the sort of unrest which inevitably results from the expression of controversial views but which must be tolerated in the schools as well as in society generally. In addition, they have produced speculative opinion testimony[13] suggesting at most that plaintiffs' proposed activity may produce insubstantial and immaterial interruptions and disturbances of teachers working in lunchrooms and faculty rooms.[14] It is clear that this minor threat can be eliminated by regulations far less inimical to First Amendment rights than the regulations challenged herein.

Similarly, defendants have failed to demonstrate that a significant threat to the "efficiency and integrity of the public service" (*Fort* v. *Civil Service Com.*, *supra*, 61 Cal.2d 331, 338) is posed by plaintiffs' proposed activity.

In denying plaintiffs' petition for writ of mandate, the trial court relied largely on the apparent absence of any reported decision holding that a private employer must permit activity on his premises analogous to that which plaintiffs seek to conduct on school premises. This hiatus in reported decisions is neither surprising nor dispositive of the matter before us. Under ordinary circumstances a private employer is

---

[13]Testimony which qualifies as admissible expert or opinion testimony (Evid. Code, §§ 720, 800-805), is, of course, perfectly good evidence. However, where such testimony is not based upon actual experience, it has limited utility in justifying a restriction of freedom of expression. (Compare *Akin* v. *Riverside Unified School Dist. Board of Education*, 262 Cal.App.2d 161, 168 [68 Cal.Rptr. 557], with *Finot* v. *Pasadena City Board of Education*, 250 Cal.App.2d 189, 200-202 [58 Cal.Rptr. 520] [involving professional judgment of school administrators concerning disruptive influence of permitting beards to be worn by students (*Akin*) or teachers (*Finot*)].) In *Finot* the court concluded that the *a priori* judgment of school administrators was sufficient to show that prohibiting male teachers from wearing beards rationally related to enhancing or preserving the effectiveness of the educational system; however, the court further concluded that this judgment was insufficient to demonstrate that the public gain to be derived from the prohibition would outweigh the resultant impairment of freedom of expression.

In the present case, the declarations of school administrators, which were apparently not based on any prior experience with circulation of petitions, did not even purport to show the extent or significance of the disruption or interference with school activities which the declarants apprehended would result from permitting plaintiffs to circulate their petition as proposed.

[14]In its key finding of fact, the trial court went only so far as to state: "There was . . . *substantial evidence* . . . to the effect that the circulation upon school premises of the subject petition [in the manner proposed by plaintiffs] would *tend* to interrupt teachers in the discharge of their employment duties, would *tend* to divert and distract the attention of teachers from their task of teaching pupils, in general would impede and interfere with optional performance by teachers during the school day of the educational functions assigned them . . . and would therefore lower the educational efficiency of the schools." (Italics added.)

not subject to the First Amendment. Our concern that certain rights of public employees not be *impaired* to a greater extent than comparable rights of private employees (see, e.g., *Bagley* v. *Washington Township Hospital Dist., supra,* 65 Cal.2d 499; *Fort* v. *Civil Service Com., supra,* 61 Cal.2d 331) does not suggest a rule that the enforceable rights of public employees may never be greater than those of private employees.

The rights of students and teachers to express their views on school policies and governmental actions relating to schools, and the power of school authorities to regulate political activities of students and faculty, are of peculiar concern to our state and nation today. Education is in a state of ferment, if not turmoil. When controversies arising from or contributing to this turbulence are brought before the courts, it is imperative that the courts carefully differentiate in treatment those who are violent and heedless of the rights of others as they assert their cause and those whose concerns are no less burning but who seek to express themselves through peaceful, orderly means. In order to discourage persons from engaging in the former type of activity, the courts must take pains to assure that the channels of peaceful communication remain open and that peaceful activity is fully protected.

In the present case, plaintiffs' proposed conduct clearly falls within the desirable category of political activity, and their past conduct clearly evidences respect for the laws and willingness to challenge them in the courts rather than through disruptive channels. Absent a showing of a clear and substantial threat to order and efficiency in the schools, such proposed First Amendment activity should not be stifled.

The judgment is reversed with direction to the trial court to issue the writ prayed for.

Traynor, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.