WONG, J.
I dissent.
In this case, Penal Code section 602.9 was used in a manner not intended by the Legislature to suppress a peaceful demonstration by appellants and other students of Southwest College. The trial court found as a matter of law that the picketing was peaceful and that there was no disturbance of the peace and no unlawful assembly.[1] Nevertheless, the peaceful demonstration *Supp. 15 was stopped and the students arrested. Appellants herein were charged and convicted of violation of Penal Code section 602.9.
On January 9, 1969, appellants and their fellow students sought to publicize the deficiencies in the educational program at their school. No one has questioned their good faith nor the legitimacy of their goals. The method chosen by the students to dramatize their viewpoint was about as innocuous as one could imagine in this day and age. By picketing and passing out handbills, they intended to urge students, faculty members, and others to boycott the college parking lot and to use other parking facilities in order to demonstrate to the administration that their requests for changes were supported by a majority of the student body at the college. The students did not urge a boycott of classes nor the shutting down of the college. In fact, the undisputed testimony of college administrators was that on the day of demonstration, class attendance at the college was normal. (R.T. p. 291, lines 6-8; p. 329, lines 16-18.)
In dealing with First Amendment freedoms, school administrators, law enforcement officials, and judges must be able to differentiate between lawful activity and unlawful activity, and must be ready, willing, and able to strike an impartial balance between conflicting interests. In Los Angeles Teachers Union v. Los Angeles City Board of Education (1969) 71 Cal.2d 551, 565 [78 Cal.Rptr. 723, 455 P.2d 827], the Supreme Court in an unanimous opinion stated: “The rights of students and teachers to express their views on school policies and governmental actions relating to schools, and the power of school authorities to regulate political activities of students and faculty, are of peculiar concern to our state and nation today. Education is in a state of ferment, if not turmoil. When controversies arising from or contributing to this turbulence are brought before the courts, it is imperative that the courts carefully differentiate in treatment those who are violent and heedless of the rights of others as they assert their cause and those whose concerns are no less burning but who seek to express themselves through peaceful orderly means. In order to discourage persons from engaging in the former type of activity, the courts must take pains to assure that the channels of peaceful communication remain open and that peaceful activity is fully protected.”
In dealing with peaceful demonstrations, school authorities should be hesitant to employ the tactics of suppressing peaceful demonstrations and mass arrests. Such tactics merely swell the ranks of those who preach the futility of peaceful demonstrations. Such tactics also result in needless expenditure of time, effort, and money by law enforcement officers, prose *Supp. 16 cutors, and courts.[2] There are other less drastic remedies available to school authorities. If during any peaceful demonstration any individual should violate the law, that person should be arrested and prosecuted for the acts which he, himself, committed. The channels of peaceful communication must remain open and peaceful activity protected.
While there are a number of statements in the majority opinion to which I cannot subscribe, I will limit my comments only to the “unlawful business” issue, the court’s erroneous jury instructions with respect to that issue, and the lack of evidence on that issue to support the convictions. The magnitude of the errors in the jury instructions and the insufficiency of the evidence under an independent review of the record in my opinion compel a reversal. Appellants are entitled to a retrial under more acceptable circumstances (See, People v. Chambers (1964) 231 Cal.App.2d 23, 34 [41 Cal.Rptr. 551]).
The crucial issue in this case is whether appellants came to their college on the day of the demonstration “without lawful business” within the meaning of Penal Code section 602.9. It should be noted that there are no published appellate court decisions concerning the validity or construction of this section. The case of People v. Agnello (1968) 259 Cal.App.2d 785 [66 Cal.Rptr. 571] cited in the majority opinion, concerned the validity of Penal Code section 602.7, which does not contain the requirement that the accused must have entered school property “without lawful business.”
Legislative History of Section 602.9
An examination of the legislative history of Penal Code section 602.9 would indicate that the Legislature did not intend that the statute be used to suppress peaceful and lawful political activity. At the time the statute was first enacted, the term “lawful business” was not defined (Stats. 1967, ch. 1161 [Assem. Bill No. 2532]). Members of the Legislature were concerned about the scope of the statute and requested an opinion of the legislative counsel with respect to the activities which constitute “lawful business.” This opinion was printed in the Assembly Journal on July 7, 1967, at page 5028, with the unanimous consent of the Assembly. This was one of those rare occasions in which the Legislature saw fit to include in the Assembly Journal a clear expression of legislative intent.
The precise question asked of the legislative counsel was:
*Supp. 17 “Do the following activities constitute ‘lawful business’ as that term is used in Assembly Bill No. 2532, as introduced:
“1. Minor who is not enrolled at the school coming on school property to contact pupils for personal reasons such as arranging social activities;
“2. Union members entering school property to contact members of the union;
“3. Parent entering school property to remove pupil without permission of school authorities;
“4. Minor enrolled in the school who carries on non-school activities on the school property such as passing out political leaflets;
“5. Pupils enrolled at the school who are striking and refusing to attend class?”
The legislative counsel was of the opinion that “lawful business’ as used in Assembly Bill 2532 referred to a reason for being present upon school property that was not otherwise prohibited by law. He also stated that since none of the five activities enumerated in the question was prohibited by law, each would constitute “lawful business” within the meaning of the bill.
Thus, it is to be noted that two of the five examples considered in the legislative counsel opinion related to political activities of the students such as passing out handbills and striking. Both were held to be “lawful business” within section 602.9 of the Penal Code. It would appear that picketing and urging students and faculty members to boycott a college parking lot would also constitute “lawful business.”
In 1968, by chapter 1229, the Legislature amended Penal Code section 602.9 to define “lawful business” as meaning “a reason for being present upon school property which is not otherwise prohibited by statute, by ordinance, or by any regulation adopted pursuant to statute or ordinance.” Thus, the Legislature adopted a definition which was consistent with the earlier opinion of the legislative counsel.
It is clear, therefore, that the Legislature intended that Penal Code section 602.9 have limited application and that it should be invoked only against persons whose reason for coming on the campus was otherwise prohibited by law. The Legislature must have been fully cognizant that all persons who came onto a campus with “lawful business” and thereafter committed an unlawful act, such as disturbing the peace, participating in an unlawful assembly, rioting, or committing assault and battery, would be subject to prosecution under the general criminal statutes. Such persons would not be *Supp. 18 subject to prosecution under Penal Code section 602.9, because they entered the campus for “lawful business.”
The Lawful Business Issue
Appellants contend that they came to the campus for lawful business, since the reason for which they came was to picket peacefully, to distribute leaflets, and to demonstrate peacefully in order to communicate their grievances and to mobilize public support. On the other hand, the People contend that the reason appellants came to the campus was not to demonstrate peacefully, but (1) to disturb the peace, (2) to participate in an unlawful assembly, (3) to obstruct the road and to interfere with traffic. As noted in the majority opinion, the court instructed the jury only with respect to the third ground and ruled as a matter of law that the picketing was peaceful and that there was no disturbance of the peace and no unlawful assembly. (Majority opinion, ante, Supp. p. 7.)
Thus, the issue that should have been presented to the jury related to the reason, motive, purpose, or intent of the appellants at the time they entered the campus. Did the appellants come to the campus with lawful business, i.e., to demonstrate and to picket peacefully; or did the appellants come to the campus without lawful business, i.e., to obstruct traffic unreasonably?
The instructions of the court on this vital issue were so erroneous that appellants could not, and did not, have a fair trial.
The Court Failed to Instruct the Jury that Only “Unreasonable” Obstructions are Unlawful
“It is settled that in criminal cases, even when not requested, the court must instruct on the general principles of law relevant to the issues raised by the evidence. [Citations.] The general principles of law governing the case are those principles closely and openly connected with the facts before the court, and which are necessary for the jury’s understanding of the case.” (People v. Wilson (1967) 66 Cal.2d 749, 759 [59 Cal.Rptr. 156, 427 P.2d 820]; People v. Wade (1959) 53 Cal.2d 322, 334 [1 Cal.Rptr. 683, 348 P.2d 116].)
Inasmuch as the theory of the People’s case was that appellants entered the campus for the purpose of obstructing traffic, it was the duty of the court to inform the jury that only unreasonable obstructions are unlawful.
In Pain v. Municipal Court (1968) 268 Cal.App.2d 151, 153 [73 Cal.Rptr. 862], the court stated: “Moreover, [Penal Code] section 370’s definition of street obstruction as a public nuisance has long been construed by California courts as limited to unreasonable obstructions. [Citations.] We *Supp. 19 accept this construction, and direct that in trying the case the court below treat the word ‘unreasonable’ as included in the statute preceding the word ‘obstruction.’ ”
In the present case, the trial court merely read Penal Code section 370 to the jury, but did not include the word “unreasonable,” nor did the court at any time inform the jury that only unreasonable obstructions are illegal. This error of omission was compounded when the trial court struck from the defendant’s proposed instruction No. 56, relating to lawful picketing, the following: “You are further instructed that this right is not to be abridged so long as the interference with the rights of others is minimal.” (Italics added.)
In seeking to dismiss lightly the error of the trial court, respondent states: “At most the failure of the trial court to insert the word ‘unreasonable’ before the word ‘obstruction’ in its definition concerning Penal Code Section 370 is harmless error and is in no way related to any deprivation of First Amendment rights.”
In view of the fact that obstruction to traffic was the sole ground upon which rested the prosecution’s case on the lawful business issue, can this be regarded as a mere harmless error? Moreover, appellants’ contention that they came upon the campus on lawful business rested upon the claim that they were in fact exercising their First Amendment rights of free speech and peaceable assembly.
Apparently, my colleagues are of the opinion that it was unnecessary for the jury to determine whether the obstruction to traffic during the picketing and demonstration was reasonable or unreasonable. (Majority opinion, ante, Supp. pp. 12, 13.) I am of the opinion that this was a factual issue for the jury, and that the court had the duty to so instruct the jury sua sponte (see People v. Wilson, supra, 66 Cal.2d 749, 759).
The Court Failed to Define “Lawful Picketing”
In presenting the appellants’ theory of the case, the court instructed the jury as follows: “You are hereby instructed that there is a constitutional right to demonstrate and peacefully picket to protest grievances. That this right may be exercised in large groups; there is a right to assembly and of petition even by mass demonstration—marching—even along public highways and streets—so long as it is lawful.”[3] (Defendant’s proposed instruction No. 56, as modified by the court.)
*Supp. 20 The court, however, failed to instruct the jury on what constituted “lawful” picketing as opposed to “unlawful” picketing.
Without such guidance from the court, the instruction was meaningless to the jury. It was the duty of the court to fully instruct the jury on this issue sua sponte. (See People v. Wilson, supra, 66 Cal.2d 749, 759.)
The Court Failed to Instruct Jury on the Balancing of Interests in a First Amendment Case
These errors of omission and commission were particularly damaging to appellants since this case involved the constitutional rights of free speech and peaceable assembly. For this reason, it was the duty of the court to inform the jury of the necessity of balancing the opposing interests, i.e., the right of free speech and peaceable assembly as opposed to the right of free access to property.
Recent opinions of the United States Supreme Court have declared that, in balancing the various public and private interests involved, the freedoms of the First Amendment must be given a preferred position. (See Marsh v. Alabama (1946) 326 U.S. 501 [90 L.Ed. 265, 66 S.Ct. 276]; Saia v. New York (1948) 334 U.S. 558 [92 L.Ed. 1574, 68 S.Ct. 1148]; Kovacs v. Cooper (1949) 336 U.S. 77 [93 L.Ed. 513, 69 S.Ct. 448, 10 A.L.R.2d 608].)
“It is now the generally accepted rule that freedom of assembly and of petition is susceptible to restriction only to prevent grave and immediate danger to interests which the state may lawfully protect. In other words, any attempt to restrict freedom of assembly must be justified by clear public interest, threatened not doubtfully or remotely, but by clear and present danger . . . only the gravest abuses, endangering paramount interests, give occasion for permissible limitation of the right of free assembly.” (16 C.J.S., Constitutional Law, § 214, p. 1167.)
In Whitney v. California (1927) 274 U.S. 357, 377 [71 L.Ed. 1095, 1106, 47 S.Ct. 641], Mr. Justice Brandéis, in his concurring opinion—in which Mr. Justice Holmes joined—said: “Prohibition of free speech and assembly is a measure so stringent that it would be inappropriate as the means for averting a relatively trivial harm to society.”[4]
Thus, in a First Amendment case, such as the present one, the trier of fact must balance the various public and private interests involved, and must give First Amendment rights a preferred position. First Amendment *Supp. 21 rights cannot be impaired as a means for averting a relatively trivial or minimal harm to society. Moreover, in determining whether the picketing and demonstrating conducted by appellants violated Penal Code section 370, the trier of fact had to determine whether the obstruction was reasonable or unreasonable.
These tasks are difficult enough when the trier of fact is a judge, schooled and experienced in the law. These tasks are more difficult when the trier of fact is a jury, even when armed with full and adequate instructions. On the other hand, when a jury is given incomplete and misleading instructions, the task of rendering a fair and impartial verdict becomes impossible.
Under the instructions as given by the court in this case, the jury was under a duty to find that appellants’ picketing and demonstrating were unlawful as long as there was any obstruction, no matter how trivial or how minimal. The jury was denied an opportunity to determine whether the obstruction was reasonable or unreasonable. The jury was denied an opportunity to balance appellants’ First Amendment rights against the degree of impairment of the right of free access to property.
The General Intent Instruction was Misleading
My colleagues have taken the position that, in a prosecution under Penal Code section 602.9, the giving of a general intent instruction is sufficient. (Majority opinion, ante, Supp. p. 10.) In determining the “unlawful business” issue, however, it was necessary that the People establish that the “reason” appellants came to the campus was to commit an act otherwise prohibited by law. This issue turns upon the motive, intent, or state of mind of the accused at the time he enters the campus.
The proof required on this issue is analogous to that required in a burglary case in which the prosecution must prove that the accused entered a building “with intent to commit grand or petit larceny or any felony.” (Pen. Code, § 459.) Burglary is a specific intent crime and failure of a court to give a specific intent instruction is error (See People v. Hill (1967) 67 Cal.2d 105 [60 Cal.Rptr. 234, 429 P.2d 586]; People v. Ruiz (1968) 265 Cal.App.2d 766 [71 Cal.Rptr. 519]). In a specific intent crime, a specific intent instruction must be given by the court on its own motion. (People v. Ford (1964) 60 Cal.2d 772, 793 [36 Cal.Rptr. 620, 388 P.2d 892]).
While it is true that defendants’ proposed instruction No. 41 referred to specific intent to violate the law, rather than specific intent to do acts which are in violation of the law, I am of the opinion that the trial court had some obligation to give the instruction with proper modifications or to give an *Supp. 22 instruction on its own motion. The giving of only the general intent instruction was not only misleading, but erroneous.
Insufficiency of Evidence
The reasonableness or unreasonableness of the obstruction of traffic during the peaceful demonstration was not the ultimate fact in determining whether appellants came to the campus “without lawful business.” In order to prove the ultimate fact necessary to secure a conviction, it was necessary for the prosecution to show that appellants unreasonably blocked traffic after they entered the campus, and to ask the jury to infer from such conduct that appellants intended to do so at the time they entered the campus. Thus, the People’s case rested entirely upon circumstantial evidence. On the other hand, appellants testified that they came to the campus for the purpose of peacefully demonstrating. There was no testimony to the contrary with respect to the appellants’ acts, conduct or declarations at the time they entered the campus.
If this case were subject to review under the substantial evidence test, we would merely ascertain if there existed substantial evidence to support the implied finding of the jury that appellants at the time they entered the campus had the intent to obstruct traffic unreasonably. We would not be entitled to reweigh the evidence.
This case may not be reviewed under the substantial evidence test, however, because First Amendment rights are involved. In reviewing a First Amendment right case, our duty as appellate court judges is to make “an independent examination of the [whole] record.” (Cox v. Louisiana (1965) 379 U.S. 536, 545 [13 L.Ed.2d 471, 478, 85 S.Ct. 453]; Edwards v. South Carolina (1963) 372 U.S. 229, 235 [9 L.Ed.2d 697, 702, 83 S.Ct. 680]; Zeitlin v. Arnebergh (1963) 59 Cal.2d 901, 909 [31 Cal.Rptr. 800, 383 P.2d 152, 10 A.L.R.3d 707]; Los Angeles Teachers Union v. Los Angeles City Board of Education (1969) 71 Cal.2d 551, 557 [78 Cal.Rptr. 723, 455 P.2d 827]; Crosswhite v. Municipal Court (1968) 260 Cal.App.2d 428, 431 [67 Cal.Rptr. 216]).
Under an independent examination of the record, we would first determine whether the obstruction to traffic was reasonable or unreasonable, giving full consideration to the fact that appellants were conducting a peaceful demonstration and to the time, place, and manner in which this demonstration was being conducted. If we found the obstruction to be reasonable, we would rule in favor of appellants. On the other hand, if we found the obstruction to traffic to be unreasonable, we would next consider whether *Supp. 23 or not from this preliminary fact we should infer that appellants at the time they entered the campus had the intent to unreasonably obstruct traffic. In deciding whether to adopt the interpretation which points to the appellants’ guilt or that which points to their innocence, we would be under an obligation to apply the law regarding circumstantial evidence (CALJIC (3d ed.) No. 2.01).[5] We would fully consider the testimony of appellants that the reason they came to school was to demonstrate peacefully and would weigh the evidence in the light of the First Amendment.
I am of the opinion that the evidence in this case fully supports appellants’ contention that the reason they came to the campus was to demonstrate peacefully. This contention is consistent with the finding of the trial court that as a matter of law there was no disturbance of the peace and no unlawful assembly. Unsupportable is the People’s contention that appellants came to school not for the purpose of peaceful picketing and demonstrations, but to obstruct traffic.
I am also of the opinion that the jury instructions were so incomplete, misleading, and erroneous that appellants could not, and did not receive a fair trial.
I would reverse the orders of the trial court based upon the erroneous verdicts.

The same day appellants herein were arrested, over 200 students were arrested at San Fernando Valley State College for failure to leave a peaceful student rally in the Open Forum area. There was no showing that anything was said or would be said at that rally which would constitute a clear and present danger (See People v. Uptgraft (1970) 8 Cal.App.3d Supp. 1, p. 5 [87 Cal.Rptr. 459]).

It was from this picketing instruction that the court struck the following: “You are further instructed that this right [to demonstrate and peacefully picket] is not to be abridged so long as the interference with the rights of others is minimal.”

While the holding in Whitney was discredited (Brandenburg v. Ohio (1969) 395 U.S. 444, 449 [23 L.Ed.2d 430, 435, 89 S.Ct. 1827]), the language quoted here remains viable.

CALJIC No. 2.01 reads: “You are not permitted to find the defendant guilty of the crime charged against him based on circumstantial evidence unless the proved circumstances are not only consistent with the theory that the defendant is guilty of the crime, but cannot be reconciled with any other rational conclusion and each fact which is essential to complete a set of circumstances necessary to establish the defendant’s guilt has been proved beyond a reasonable doubt.
“Also, if the evidence is susceptible of two reasonable interpretations, one of which points to the defendant’s guilt .and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant’s innocence, and reject the other which points to his guilt.”