EARL HASENSTAB *et al.*, Plaintiffs-Appellants, *v.* THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE CITY OF BELLEVILLE *et al.*, Defendants-Appellees.

Fifth District    No. 78-255

Opinion filed April 24, 1979.

William D. Stiehl, of Belleville, for appellants.

Robert J. Sprague, of Belleville, for appellees.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:
This is an appeal from an order of the circuit court affirming a decision of the Board of Fire and Police Commissioners of Belleville, an administrative agency.

The hearing before the Board of Fire and Police Commissioners (hereinafter referred to as "Board") resulted from a public meeting held by the City Council of Belleville in the council chambers, with public notice having been given of the meeting. The meeting was held in connection with labor negotiations; and members of several labor unions, other labor representatives, the news media and the general public were present. At the meeting, the city council voted to fire 80 to 90 city employees who were members of various unions. The four plaintiffs, who were out of uniform and off duty, were present at the meeting. They were members of the Belleville Fire Department and Local 53 of the International Association of Fire Fighters. All four had unblemished records, and none of them had ever been disciplined. One had four years of service, two had 23 years of service and one had 25 years of service. Hasenstab and Smallwood were pipemen, and Wilson and Riesenberger were captains. The meeting adjourned about 11:30 p.m., after which the disputed incidents occurred.

Shortly after the city council meeting adjourned, someone in the audience said loudly words to the effect, "Where is the labor man of the year?" apparently referring to Mayor Nichols. Police Captain Mercurio and Alderman Koeneman testified that Hasenstab made the statement, but Smallwood, Captain Wilson and a reporter, Enyart, all testified that it was not Hasenstab, nor any other firefighter, who made the remark.

Following this, Hasenstab approached the railing separating the council floor from the visitor's gallery. The following conversation took place between Hasenstab and Alderman William Calhoun:

"Hasenstab: "Well, dummy, you did it again. [A brief conversation with Alderman Forayt occurred.] There's no sense talking to you, I can get as much sense out of that tree. You're some fine union men.

Calhoun: I'm as good a goddamn union man as you are. How many jobs do you have?

Hasenstab: I don't moonlight.

Calhoun: Well, check with your other union brothers and see how much they moonlight."

This exchange lasted about two minutes. Witnesses variously characterized it as a "little discussion," "heated discussion," "this rather small incident," "heated argument," and "loud discussion."

There was testimony that the voices of Calhoun and Hasenstab were equally loud. Alderman Stelling, who was 2 feet away, did not hear the discussion, and Alderman Thompson was 8 to 10 feet away and could not hear anything other than a lot of mumble.

At about this time, Police Captain Mercurio either asked or ordered the plaintiffs to clear the room; however, they did not comply. Captain

Wilson asked why firemen were singled out and were asked to leave the room. He said, "* * * this is an open council meeting, and I feel like we have the same right to remain as anyone else." Captain Riesenberger said, "* * * the room has a lot of people in it, why are you choosing us to leave?" Captain Mercurio responded, "* * * well, I've been given orders to get you guys out of here." At the time there was a good deal of activity and disturbance in the room, caused by conversations among the aldermen, spectators, press, reporters and cameramen, and TV crews. After Mercurio had asked or ordered them to leave several times, the plaintiffs left together, at the same time that others started leaving also. This was approximately three to 10 minutes after the first time Captain Mercurio asked them to leave, according to the testimony. It was not necessary to use any physical force to get them to leave. There were no violent acts, no threats of violence, and no threatening gestures made by any of the plaintiffs.

On June 3, 1975, the defendants filed written charges with the Board of Fire and Police Commissioners, charging the plaintiffs with violating sections 4, 19, and 22 of the General Rules and Regulations of the Fire Department Manual, as follows:

"1. * * * with violating Section 4 in that they failed to obey the lawful order of a police officer in the performance of his duties. Specifically, on May 22, 1975, at approximately 11:30 P.M., they failed to leave the City Council Chambers when ordered to do so by Captain Michael Mercurio. This order was issued because of the lack of good behavior on the part of Firemen Hasenstab, Wilson, Smallwood and Riesenberger following the City Council meeting of May 22, 1975.

2. * * * with violating Section 22 in that following the City Council meeting of May 22, 1975, they used obscene, immoral, disrespectful and impudent language towards various members of the general public, the Belleville Police Department, and the Belleville City Council, thereby being discourteous and disrespectful to them.

[The charge as to section 19 is not set forth, because plaintiffs were acquitted of it.]"

Section 4, General Rules and Regulations of the Fire Department Manual of the City of Belleville, Illinois, reads as follows:

"In the matter of general conduct not within the scope of Department rules, a member shall be governed by the ordinary rules of good behavior by a law-abiding citizen."

Section 22, General Rules and Regulations of the Fire Department Manual of the City of Belleville, Illinois, provides:

"No member of the Department shall use obscene, immoral,

disrespectful or impudent language; and every member shall at all times be courteous and respectful, and shall promptly report to his Commanding Officer all matters affecting the interest and welfare of the Department."

A public hearing on these charges was held by the Board on June 19, 1975. Chapter 61 of the Ordinances of the City of Belleville was admitted into evidence at the hearing over the objection of the plaintiffs. The basis of their objection was that said ordinance was irrelevant in that they had not been charged with its violation. Chapter 61 of said ordinance provides in part:

"61.02 DISORDERLY CONDUCT. A person commits disorderly conduct when he knowingly:

(a) Does any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace; or * * *
* * *
(f) Does any act which will disturb the public peace and quiet or is likely to provoke a breach of the peace; or

(g) Refuses to comply with the reasonable and proper orders of a police officer in the discharge of his duties; or

(h) Uses unseemly, profane, obscene or offensive language in a public place; * * *."

The Board entered its finding and decision on July 16, 1975, in which it found all four plaintiffs guilty of violating sections 4 and 22 and innocent of violating section 19 of the General Rules and Regulations of the Fire Department Manual. The Board ordered Hasenstab suspended without pay for 5 days and Wilson, Smallwood and Riesenberger reprimanded.

On July 18, 1975, plaintiffs filed their complaint for administrative review in the circuit court, and on March 13, 1978, the circuit court entered its order affirming the decision of the administrative agency. It is this order from which this appeal is taken.

The Board imposed sanctions on the four firemen for failure to obey the lawful order of a police officer in the performance of his duties and for their failure to leave the city council chambers when ordered to do so by Police Captain Mercurio. Fireman Hasenstab was also found to have used "disrespectful language" in his conversation with Alderman Calhoun.

■■ On appeal, the Board contends that this court is limited in its scope of review to determine whether there was evidence fairly tending to support the Board's decision, stating that this court should not "reweigh" the evidence. Although the evidence is conflicting regarding the behavior of the firemen, it is not necessary to reweigh the evidence. It is our duty to see that, based on the evidence before it, the Board applied the correct standards in determining whether or not cause existed to discipline these

firemen. Here the firemen argue that the decision of the Board violated their constitutional rights to freedom of speech and freedom of assembly. ▆▆▆ The authority given the Board to discipline firemen for cause is not an arbitrary power, but is an authority to be exercised on just and reasonable grounds. (*Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 189 N.E.2d 275.) Although a public employee does not have a constitutional right to such employment, he cannot be barred or removed from that employment arbitrarily or in disregard of his constitutional rights. (*Dendor v. Board of Fire & Police Commissioners* (1st Dist. 1973), 11 Ill. App. 3d 582, 297 N.E.2d 316.) The acceptance of public employment is not an abandonment of constitutionally protected rights. (*Belshaw v. City of Berkeley* (1966), 246 Cal. App. 2d 493, 54 Cal. Rptr. 727.) A public employee cannot be discharged or otherwise penalized because of his exercise of the right of freedom of speech as guaranteed by the first amendment. (*Sincox v. Board of Education* (7th Cir. 1971), 443 F.2d 40.) Firemen, like policemen and teachers, are not relegated to a watered-down version of constitutional rights. With regard to the right of free speech, a public employee may speak freely, as long as he does not impair the administration of the public service in which he is engaged. *City of St. Petersburg v. Pfeiffer* (Fla. 1951), 52 So. 2d 796.

▆▆ ▆ A governmental unit like the City of Belleville can regulate the speech of its employees either by a rule or, as in this case, by a ruling that affects the employment status. However, when it does and we are asked to determine the validity of the rule or ruling, we weigh the impairment of free speech against both the governmental interest and the substantiality of the threat which the forbidden speech represents. (*Los Angeles Teachers Union v. Los Angeles City Board of Education* (1969), 71 Cal. 2d 551, 455 P.2d 827, 78 Cal. Rptr. 723.) In this process, the governmental unit has the burden of proving that the forbidden speech rendered the speaker unfit for public service, or so adversely affected the public service involved that it justifies impairment of free speech. (*Brukiewa v. Police Commissioner* (1970), 257 Md. 36, 263 A.2d 210; *Klein v. Civil Service Com.* (1967), 260 Iowa 1147, 152 N.W.2d 195.) These constitutional principles are nurtured by the policy that the public has an interest in the free speech rights of its employees. *Kiiskila v. Nicols* (7th Cir. 1970), 433 F.2d 745, 748-49.

▆▆ Under these guidelines, the statements made by the firemen and their conduct do not justify the discipline imposed by the Board. The Board has failed to meet its burden of proving that Hasenstab's speech rendered him unfit for public service or that it so adversely affected the public service involved that it justified that impairment of free speech.

In *Dendor*, the plaintiff, a property owner, resident and fireman,

attended a public meeting of the village trustees. Village officials knew that he had expressed dissatisfaction with the leadership of the fire department. At the meeting, he said to the trustees: "Right now, you are shedding your responsibility to the Village by not giving us adequate fire protection." Referring to his superior, the fire marshall, Dendor said, "If you allow him to stay here longer, there will be incredible damage. The chief just can't handle a regular fire department. He doesn't know how." Then, referring to the volunteer force of the department, Dendor said, "[I]f the Board of Trustees continues with the volunteer force, it will end in disaster." Dendor was discharged by the Northbrook Board, but the trial court reversed the Board's decision and ordered Dendor reinstated. The appellate court affirmed the trial court on the basis that this speech did not impair the administration of the service in which he was engaged.

In *City of St. Petersburg v. Pfeiffer* (Fla. 1951), 52 So. 2d 796, a fireman was given a 90-day suspension because he made derogatory statements concerning the operation and efficiency of the city fire department and of his fire chief's ability to run the department. In reviewing a judgment which ordered the fireman's reinstatement, the Supreme Court of Florida held that "the charge was insufficient to predicate jurisdiction for suspension or removal. [The derogatory statement] was an expression of Pfeiffer's low opinion of his chief's talents. We approach danger when we allow an employee to be disciplined for criticizing or voicing a want of regard for his superior's abilities. * * * An employee may express himself freely so long as he *does not impair the administration of the service in which he is engaged.*"

If anything, the statements of Fireman Hasenstab are less derogatory than those in *Dendor* and *Pfeiffer*. Hasenstab called Alderman Calhoun a "dummy" and stated, presumably in sarcasm, "You're some fine union men [*sic*]." Under the authorities cited above, we hold that the Board may not discipline fireman Hasenstab for these statements, because to do so would infringe upon his constitutional right to freedom of speech.

We next consider the imposition of sanctions against the four firemen for refusal to leave the city council chambers when asked or ordered to do so by a police officer. It is unnecessary to determine whether Captain Mercurio ordered or asked the firemen to leave. Assuming that he ordered the men to leave, to the extent that his order was based on the conversation of fireman Hasenstab, it exceeded Mercurio's authority. We have already ruled that Hasenstab's conversation was protected by the constitutional right of freedom of speech. To whatever extent Mercurio's order was based upon other factors, the record discloses that the order was an infringement upon the plaintiffs' rights to freedom of assembly. The firemen were off duty, out of uniform and present at a public meeting

at which an unknown number of other spectators were also present. The mayor was holding a press conference and conversations were occurring between the alderman and spectators. News media, both press and television, were present, and considerable noise, activity and conversation were occurring. Yet the record indicates that the plaintiffs committed no violent acts and made no threats. As members of the public, they were clearly entitled to be present at a public meeting. The order to leave violated their constitutional right to freedom of assembly. Although the Board urges that disobedience of a lawful order of a superior officer constitutes grounds for discipline of a public employee, we find this contention unpersuasive for several reasons. First, the order was not lawful since it, without justification, transgressed the firemen's right to assembly. Second, the order was made by a police captain to two fire captains and two firemen. A police captain is not a superior officer to the firemen. Finally, the cases cited by the Board are all distinguishable in that they involve orders related to the public employee's job or duty. Here the firemen were off duty and attending a public meeting as citizens.

For the foregoing reasons, we hold that the Board's sanctions against the firemen were unconstitutional and improper and that the circuit court erred in affirming the actions of the Board and in dismissing plaintiffs' complaint.

Accordingly, the order of the circuit court is reversed.

Reversed.

G. MORAN, P. J., and KUNCE, J., concur.